USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 12/27/2023

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------X
:
ZERO CARBON HOLDINGS, LLC and FOUR : 23-cv-05262 (LJL)
THIRTEEN, LLC,
:
Plaintiffs,
: MEMORANDUM AND
-v- ORDER
:
ASPIRATION PARTNERS, INC.,
:
Defendant.
:
------------------------------------------------------------------X

LEWIS J. LIMAN, United States District Judge:

Defendant Aspiration Partners, Inc. ("Defendant" or "Aspiration") moves, pursuant to Federal Rule of Civil Procedure 12(b)(6), to dismiss the Third Amended Complaint. Dkt. No. 37. For the foregoing reasons, the motion to dismiss is denied.

## BACKGROUND

Zero Carbon Holdings, LLC ("ZCH") is a company that supports carbon credit projects that reduce greenhouse gas emissions or increase carbon sequestration. Dkt. No. 35 ¶ 1.[1] Four Thirteen, LLC ("413" and, together with ZCH, "Plaintiffs") is the sole member of ZCH. *Id.* ¶¶ 1, 6. Both companies engage in a "conscious capitalism" investment model. *Id.* ¶ 17. Through this model, they aim to achieve financial returns while simultaneously promoting long-term environmental and social capital. *Id.* Among Plaintiffs' investments are carbon credit

---

[1] The Court assumes the truth of the well-pleaded allegations of the third amended complaint as supplemented by the documents incorporated by reference. *See, e.g., AT&T Corp. v. Atos IT Sols. & Servs., Inc.*, 2023 WL 8878935, at *1 (S.D.N.Y. Dec. 22, 2023).

projects designed to reduce the amount of carbon dioxide in the environment. *Id.* ¶ 19. Aspiration is an experienced and sophisticated carbon credit reseller. *Id.* ¶ 20.

The dispute concerns carbon credits which are generated by projects designed to reduce greenhouse gas emissions and which are issued by certain nongovernmental entities operating in the voluntary carbon markets space. *Id.* ¶¶ 21–22. By engaging in projects designed to reduce greenhouse gas emissions, a company can earn carbon credits, which represent the right to emit a specified amount of carbon dioxide into the environment. *Id.* A company that receives carbon credits may either use the credits to compensate for their pollution output or sell excess credits on the market to companies with greater need. *Id.* ¶ 21. Because carbon credits are transferrable, there is a significant secondary market. *Id.* ¶ 22.

ZCH and Aspiration are parties to a prepaid forward transaction, pursuant to which ZCH agreed to transfer to Aspiration carbon credits generated by two reforestation projects in the Amazon rain forest in Brazil, which the parties refer to as "ZCH-1" and "ZCH-2," (together the "Approved Projects"), in exchange for payment from Aspiration.

The transaction was effected through two sets of documents: (1) an International Swaps and Derivatives Association ("ISDA") Master Agreement and February 9, 2022 Confirmation for the prepaid forward transaction, Dkt. Nos. 35-1, 35-2; and (2) an Equity Pledge Agreement, securing ZCH's performance, Dkt. No. 35-3.

Pursuant to the Confirmation, ZCH agreed to deliver carbon credits in the Physical Settlement Quantities on two separate dates, the Physical Settlement Dates, for a total of 6,555,556 Carbon Credits. *See* Dkt. No. 35-2. The Confirmation provided in relevant part:

> On or before each Physical Settlement Date, Seller [ZCH] shall deliver or cause to be delivered to the Buyer [Aspiration], Carbon Credits in the relevant Physical

> Settlement Quantity for such Physical Settlement Date.  It being understood that there may be multiple Physical Settlement Dates during each Physical Settlement Calculation Period until the Period 1 Amount or the Period 2 Amount, as applicable, is reached.  For the avoidance of doubt, Seller [ZCH] shall cause the Total Quantity to be delivered to Buyer [Aspiration] during the Term hereof.  The delivery of any such Carbon Credits shall be in accordance with the then current market practice for delivery of carbon credits issued by the Registry on or about the relevant Physical Settlement Date.  Notwithstanding the foregoing, it is the intent of the parties that Buyer [Aspiration] shall acquire all right, title and interest in and to the relevant Carbon Credits immediately upon issuance thereof by the Registry.

*Id.* at 2.  A "Carbon Credit" is defined in the Confirmation as "the carbon credits issued by the Registry and generated by either of the Approved Projects." *Id*.

The first physical settlement was for up to 3,600,000 Carbon Credits.  The Confirmation defines Physical Settlement 1 Dates as "the earlier to occur of: (x) each date on which Carbon Credits are issued by the Registry (each a 'Registry Issuance Date') during the Physical Settlement 1 Calculation Period; and (y) December 31, 2022 (as may be extended by up to ninety (90) days by mutual agreement of the parties, not to be unreasonably withheld)." *Id*.

The Confirmation defines Physical Settlement 1 Quantity as "[t]he amount of Carbon Credits issued by the Registry on each Registry Issuance Date during the Physical Settlement 1 Calculation Period; *provided, however*, in no event shall the aggregate Physical Settlement 1 Quantity for all Physical Settlement 1 Dates during the Physical Settlement 1 Calculation Period exceed 3,600,000 Carbon Credits (the 'Period 1 Amount')." *Id*. (emphasis in original).

The Physical Settlement 1 Calculation Period is "[t]he period from and including, the Effective Date [February 9, 2022] through, and including, December 31, 2022 (as extended)." *Id.*  The Physical Settlement 2 Quantity covers the remaining 2,955,556

Carbon Credits, and is defined as "the amount of Carbon Credits issued by the Registry on each Registry Issuance Date during the Physical Settlement 2 Calculation Period," (a period which runs through and including the Termination Date). *Id.* at 3. The Termination Date is September 30, 2024 (as may be extended by Aspiration in its sole discretion). *Id.* at 1.

Critical to this case is the notion of the "Registry." The Registry is defined as "VERRA," a nonprofit, nongovernmental agency tasked with auditing the two projects and then issuing carbon credits. Dkt. No. 35 ¶¶ 32–34. VERRA manages the world's leading voluntary carbon markets program, the "Verified Carbon Standard" in alignment with emerging compliance frameworks including the Paris Agreement. *Id*. ¶ 34. VERRA's audit process is two-fold: (1) in the validation phase, a VERRA auditor approves the final description of the project; and (2) in the verification phase, VERRA considers the project's sponsoring plan and confirms that a successful reduction or removal of harmful emissions has occurred. *Id.* ¶¶ 35–37.

As collateral for its performance of the obligations under the Agreement, ZCH granted Aspiration a security Uniform Commercial Code ("UCC") membership interest in the right to control and operate the Approved Projects. *Id.* ¶ 50. To facilitate this arrangement, 413—the sole member of ZCH—pledged its membership interests in ZCH to Aspiration pursuant to an Equity Pledge Agreement that, like the Confirmation, was also dated February 9, 2022. *Id.*; Dkt. No. 35-3. Pursuant to the Equity Pledge Agreement, 413 pledged to Aspiration all its right, title and interest in ZCH as security for "the due and punctual performance and payment in full of all of ZCH's obligations under the Prepaid Forward Agreement." Dkt. No. 35 ¶ 79; Dkt. No. 35-3 ¶ 2(a). In the

event of default on the Prepaid Forward Agreement, Aspiration had the right to exercise the voting rights and powers of ZCH and to be substituted for 413 and acquire 413's rights with respect to ZCH under the LLC Agreement. Dkt. No. 35-3 at 6.

"Events of Default" are defined in Section 5 of the ISDA Agreement. *Id.* ¶ 50. Sections 5(a)(i) and (iv) of the ISDA Agreement provide, in relevant part:

> (a) **Events of Default**. The occurrence at any time with respect to a party or, if applicable, any Credit Support Provider of such party or any Specified Entity of such party of any of the following events constitutes (subject to Sections 5(c) and 6(e)(iv)) an event of default (an "Event of Default") with respect to such party:
> **(i)** **Failure to Pay or Deliver**. Failure by the party to make, when due, any payment under this Agreement or delivery under Section 2(a)(i) or 9(h)(i)(2) or (4) required to be made by it if such failure is not remedied on or before the first Local Business Day in the case of any such payment or the First Local Delivery Day in the case of any such delivery after, in each case, notices of such failure is given to the party; …
> **(iv)** **Misrepresentation**. A representation (other than a representation under Section 3(e) or 3(f) made or repeated or deemed to have been made or repeated by the party or any Credit Support Provider of such party in this Agreement or any Credit Support Document proves to have been incorrect or misleading in any material respect when made or repeated or deemed to have been made or repeated

Dkt. No. 35-1 ¶¶ 5(a)(i), (iv).

The two reforestation projects have been plagued with delay. ZCH began the process of developing the projects in or around December 2021. Dkt. No. 35 ¶ 23. ZCH expected the carbon credits associated with ZCH-1 to be issued in or around late in the third quarter of 2022. *Id.* ¶ 62. However, Aspiration and ZCH were forced to extend the Physical Settlement 1 Date from December 31, 2022 to March 31, 2023 when political unrest surrounding the 2022 presidential election in Brazil made it clear that the issuer would not have access to the land to timely complete their audit work and that issuance of ZCH-1 would be delayed. *Id.* ¶¶ 61–69.

ZCH-2 fared even worse. In or around October 2022, when the development process for ZCH-2 was approximately sixty percent complete, a forest inventory firm with whom ZCH had contracted alerted ZCH and its attorneys that all of the parcels being used to develop the ZCH-2 project overlapped with areas designed by state governments as public park lands, which prohibited the development of carbon credit projects. *Id.* ¶ 54–56. As a result, and after consultation with experts, ZCH concluded that ZCH-2 needed to be abandoned in its entirety and notified Aspiration of this development. *Id.* ¶¶ 56–60.

On February 1, 2023, Aspiration sent the first of what would become three notices of default to ZCH under the ISDA Agreement. It stated that ZCH had defaulted under Section 5(a)(iv) of the ISDA Agreement by certain oral representations that ZCH had made regarding the Approved Projects and asserted its right to foreclose its security interests in accordance with the Equity Pledge Agreement. *Id.* ¶ 73. Aspiration sent a second notice of default to ZCH on March 28, 2023. *Id.* ¶ 75. Again invoking Section 5(a)(iv) of the ISDA Agreement, Aspiration asserted the same alleged misrepresentation and once again invoked its right to immediately seek to foreclose its security interests under the Equity Pledge Agreement. Dkt. No. 35-5. On May 17, 2023, Aspiration sent a third notice of default to ZCH. Dkt. No. 35 ¶ 77. The third notice asserted that ZCH had failed to timely deliver the carbon credits pursuant to Section 5(a)(i) of the ISDA Agreement. *Id.*

On May 8, 2023, Aspiration delivered notice to ZCH and 413 of its intent to sell (i) the membership interests issued by ZCH; and (ii) the rights to each of the Approved Projects pledged by ZCH. *Id.* ¶ 81; Dkt. No. 35-6. Two weeks later, Aspiration sent a second notice of its intent to sell the interests, setting the date of public auction as June

26, 2023.  Dkt. No. 35 ¶ 82; Dkt. No. 35-7.  Aspiration pushed off public auction several times.  *See* Dkt. Nos. 35-8, 35-9, 35-10.

## PROCEDURAL HISTORY

ZCH and 413 filed this action on June 21, 2023.  Dkt. No. 5.[2]  On July 17, 2023, Plaintiffs filed an amended complaint, Dkt. No. 8, and a proposed temporary restraining order, seeking to restrain Aspiration from proceeding with its planned foreclosure sale, Dkt. No. 9.  In response, Aspiration agreed to a standstill in its foreclosure proceedings until the Court convened a full evidentiary hearing and ruled on the motion for a preliminary injunction.  Dkt. No. 11.

Plaintiffs filed a second amended complaint on July 24, 2023, Dkt. No. 16,[3] which Defendant moved to dismiss on September 21, 2023, Dkt. Nos. 25–26.

By order of October 25, 2023, the Court permitted Plaintiffs to file a third amended complaint on consent.  Dkt. Nos. 33–34.  On November 2, 2023, Plaintiffs filed a third amended complaint, asserting seven claims for declaratory relief: (1) that the issuance of carbon credits by VERRA is a condition precedent to the delivery by ZCH of carbon credits, Dkt. No. 35 ¶¶ 90–95; (2) that there has been a failure of condition precedent in that VERRA had not issued carbon credits, *id.* ¶¶ 96–103; (3) that ZCH is relieved from performance under the Confirmation by virtue of the impossibility and impracticability of performance, *id.* ¶¶ 104–12; (4) that ZCH is relieved from

---

[2] Plaintiffs attempted to file the complaint on June 21, 2023, but it was rejected for a filing error.  Dkt. No. 1.  The complaint was accepted for filing on June 22, 2023.  Dkt. No. 5.
[3] The Second Amended Complaint was addressed exclusively to what Defendant had identified as Plaintiffs' errors in pleading diversity jurisdiction.

performance under the Confirmation by virtue of the doctrine of frustration of purpose, *id.* ¶¶ 113–22; (5) that no default has occurred, *id.* ¶¶ 123–30; (6) that, because no default has occurred, Aspiration did not have a membership interest in ZCH, *id.* ¶¶ 131–37; and (7) that Aspiration's right to control the approved projects ceased upon the receipt of the carbon credits, *id.* ¶¶ 138–45.

On November 10, 2023, Defendant filed a motion to dismiss the third amended complaint, along with a memorandum of law. Dkt. Nos. 37–38. On November 17, 2023, ZCH filed its memorandum of law in opposition to the motion to dismiss. Dkt. No. 40. On November 22, 2023, Defendant filed a reply memorandum of law in further support of its motion to dismiss. Dkt. No. 42. On December 21, 2023, the Court held oral argument on the motion to dismiss.

A bench trial is scheduled for early April 2024, at which time the Court will receive direct testimony by declaration.

**DISCUSSION**

To survive a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted, a complaint must include "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A complaint must offer more than "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "naked assertion[s]" devoid of "further factual enhancement." *Twombly*, 550 U.S. at 555, 557. The ultimate question is whether "[a] claim has facial plausibility, [*i.e.*,] the plaintiff pleads factual content that allows the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. Put another way, the plausibility requirement "calls for enough fact to raise a reasonable expectation that discovery will reveal evidence [supporting the claim]." *Twombly*, 550 U.S. at 556; *see also Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 46 (2011).

As Defendant put it at oral argument, there is a single question at the heart of this case and of these motions: in the absence of the issuance of carbon credits by VERRA was ZCH obligated to deliver carbon credits to Aspiration by the end of the extension period or March 31, 2023, such that an event of default has occurred? The question is one of contract interpretation. The Court looks to the totality of the agreements in effect in 2022 and attempts to "give effect and meaning . . . to every term of [the] contract and strive to harmonize all of its terms." *Spinelli v. Nat'l Football League*, 903 F.3d 185, 200 (2d Cir. 2018) (internal quotation marks and citation omitted); *see also* Restatement (Second) of Contracts § 203(a) (1981) ("[A]n interpretation which gives a reasonable, lawful, and effective meaning to all the terms [of an agreement] is preferred to an interpretation which leaves a part unreasonable, unlawful, or of no effect."). The Court "should 'examine the entire contract and consider the relation of the parties and the circumstances under which it was executed. Particular words should be considered, not as if isolated from the context, but in the light of the obligation as a whole and the intention of the parties as manifested thereby.'" *Holland Loader Co., LLC v. FLSmidth A/S*, 313 F. Supp. 3d 447, 469 (S.D.N.Y. 2018) (quoting *MBIA Ins. Corp. v. Patriarch Partners VII, LLC*, 842 F. Supp. 2d 682, 704 (S.D.N.Y. 2012)). A contract is clear and unambiguous "where the contract language has a definite and precise meaning, unattended by danger of misconception in the

purport of the [contract] itself, and concerning which there is no reasonable basis for a difference of opinion." *Chesapeake Energy Corp. v. Bank of N.Y. Mellon Trust Co., N.A.*, 773 F.3d 110, 114 (2d Cir. 2014) (quoting *Law Debenture Trust Co. of N.Y. v. Maverick Tube Corp.*, 595 F.3d 458, 467 (2d Cir. 2010)). "At the motion to dismiss stage, a district court may dismiss a breach of contract claim only if the terms of the contract are unambiguous." *Orchard Hill Master Fund Ltd. v. SBA Commc'ns Corp.*, 830 F.3d 152, 156 (2d Cir. 2016). "A contract is ambiguous under New York law 'if its terms could suggest more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement and who is cognizant of the customs, practices, usages and terminology as generally understood in the particular trade or business.'" *Id.* at 156–57 (quoting *Chesapeake Energy Corp.*, 773 F.3d at 114). "[I]f a contract is ambiguous as applied to [the facts that furnish the basis of the suit], a court has insufficient data to dismiss a complaint for failure to state a claim." *Orlander v. Staples, Inc.*, 802 F.3d 289, 295 (2d Cir. 2015) (quoting *Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y.*, 375 F.3d 168, 178 (2d Cir. 2004)). Where "there are a number of reasonable interpretations of the relevant [c]ontract provisions," the contract is "ambiguous as a matter of law." *Id.* at 297.

Here, each of the competing parties offer forceful arguments for their interpretation of the Confirmation. Defendant argues that ZCH was required by December 31, 2022 (or any agreed upon adjourned date) to issue Carbon Credits in an amount up to 3,600,000. Defendant argues that Plaintiffs are in default of the Agreement and that it is entitled to exercise its right in the collateral securing ZCH's performance because the December 31, 2022 date and the March 31, 2023 extension of the drop-dead date for delivery has passed and Plaintiffs have yet to deliver the Carbon Credits for

which Aspiration provided prepayment. It highlights that the Confirmation is structured and described as a "prepaid forward agreement," and not an option. Defendant further argues that, on ZCH's proposed interpretation, the first Physical Settlement Date and the deadlines for that Settlement Date would be rendered illusory. There would be no reason for the parties to establish an intermediate settlement date and to provide that the failure to satisfy a delivery obligation on that date was an event of default if ZCH had an obligation to deliver Carbon Credits only upon the issuance of Carbon Credits. Defendant says that Plaintiffs assumed the risk of any delay in the issuance of Carbon Credits. Defendant argues that the critical language "issued by the registry" identifies the Carbon Credits at issue and does not constitute a condition precedent.

For their part, Plaintiffs argue that the issuance of Carbon Credits by VERRA is a condition precedent to its obligation to deliver and that they cannot be in default because no Credits have been issued by the Registry and thus there were no Credits that they were obligated to deliver. In Plaintiffs' view, the December 31, 2022 date was not a drop-dead date, but rather a date upon which Plaintiffs' obligations would be extinguished. If VERRA issued Carbon Credits in the time period leading up to December 31, 2022, ZCH would have to deliver them in an amount up to 3,600,000. But, if no Carbon Credits were issued by the December 31, 2022 date, then VERRA's obligation to deliver up to 3,600,000 Carbon Credits would be extinguished. Plaintiffs rely upon the definition of "carbon credits" as "credits issued by the Registry and generated by either of the Approved Projects." Dkt. No. 35-2 at 3. If no credits were issued by the Registry, then Plaintiffs would have no obligation to deliver credits. It also relies upon the definition of "Physical Settlement 1 Quantity" as "[t]he amount of Carbon Credits issued by the Registry on each Registry Issuance Date during the Physical Settlement 1 Calculation Period."

*Id.* at 2.  That provision contains a maximum number of credits to be issued—3,600,000—but it contains no minimum.  *Id.*  ZCH argues that the Court should not insert a minimum when the parties did not negotiate for one.

Each of the parties' arguments has some vulnerabilities.  Plaintiffs' argument seemingly reads out of the Confirmation the language that, "[f]or avoidance of doubt," ZCH must deliver the "Total Quantity" to Aspiration—the Total Quantity being defined as "[t]he sum of the Period 1 Amount and the Period 2 Amount."  Dkt. No. 35-2 at 2–3.  Under Plaintiffs' interpretation, that language is seemingly surplusage.  Plaintiffs' argument is further difficult to reconcile with the parties' establishment of two settlement delivery dates and with the fact that the contract is plainly a prepaid forward transaction.  On the other hand, Defendant's argument reads into the Confirmation a minimum that is not specified in the language regarding the Physical Settlement 1 Quantity.  It also would read the definition of Carbon Credits as "carbon credits to be issued by the Registry" not "carbon credits issued by the Registry."

## CONCLUSION

At this stage of the proceedings, it is not the role of the Court to judge the strength of each of the parties' arguments.  The Confirmation is ambiguous as written.  Accordingly, Defendant's motion to dismiss is DENIED and the case will proceed to the bench trial.  The Clerk of Court is respectfully directed to close Dkt. No. 37.

SO ORDERED.

Dated: December 27, 2023
      New York, New York                              _____
                                                      LEWIS J. LIMAN
                                                      United States District Judge