UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

ZERO CARBON HOLDINGS, LLC and
FOUR THIRTEEN, LLC

        Plaintiff,

       -v-

ASPIRATION PARTNERS, INC.,

        Defendant.

Case No. 23-cv-5262-LJL

**DIRECT TESTIMONY OF
JOSEPH GAGLIANO**

1.      My name is Joseph Gagliano. I offer this direct testimony in support of Plaintiffs' claims for a declaratory judgment, and in opposition to Aspiration's claims.

**The Parties**

2.      Since the founding of Plaintiff Four Thirteen, LLC ("413") in 2019, I have been responsible for managing the operations of the company.

3.      413 is the sole owner of Plaintiff Zero Carbon Holdings, LLC ("ZCH"), which is a Wyoming limited liability company. ZCH is the entity responsible for the development of the carbon credit projects (as defined in the Confirmation, the "Approved Projects") that are the subject of this case.

4.      In my role with 413, I, along with other employees of 413, have been responsible for overseeing the development of the Approved Projects. I am currently working on behalf of 413, but am not now receiving a salary. My principal activities involve coordinating with third party service providers in Brazil in developing the projects.

1

**The Agreements**

5.        On February 9, 2022, ZCH and 413 entered into a series of agreements with Aspiration Partners, Inc. ("Aspiration") relating to the Approved Projects.  Those agreements include the Confirmation, the ISDA Master Agreement as incorporated into the Confirmation, and an Equity Pledge Agreement (collectively, the "Agreements").  (*See* P-X 1, P-X 3, and P-X 2.)  I was not directly involved in the negotiations with Aspiration representatives leading up to the execution of the Agreements, but I was kept apprised of the status of those negotiations, and provided my own input through my communications with other ZCH employees who were involved in the negotiations, including Jay Rogers.

6.        During the period leading up to the signing of the Agreements, we provided Aspiration with every opportunity to conduct due diligence on the Approved Projects, including by putting Aspiration in touch with BMO Radicle ("Radicle") – the company that had prepared the feasibility reports for the Approved Projects – providing Aspiration direct conversations with our environmental legal teams, and providing Aspiration with all underlying land documents and feasibility reports prepared by Radicle (*see* P-X 32 and P-X 33) and other documentation and information pertaining to the projects.

7.        As I recall, Aspiration took the lead in drafting the Agreements.  At one point earlier in the negotiations, we believed we had a deal, and had even returned a signed agreement to Aspiration.  Aspiration responded, however, that the earlier draft had been sent by mistake, and sent a revised draft containing substantial changes, and even included a new agreement – the Equity Pledge Agreement.  One provision that underwent substantial changes by Aspiration was the provision on collateral.  At one point, for example, Aspiration included a provision that required cash collateral of the payment amount in a separate account.  We made clear that we could not

enter into an agreement that restricted our use of the proceeds in this manner, and Aspiration agreed to remove that requirement and instead revised the Confirmation to provide Aspiration with collateral in the form of the yet-to-be-issued carbon credits.  (*See* P-X 10 at 2-3.)  It was also communicated to me that Aspiration was seeking to obtain collateral interests directly in 413.  We did not agree to that request either.

8.      My reading of the Agreements, and the Confirmation in particular, is that ZCH agreed to use its good faith efforts to diligently develop the carbon credit projects designated in the Agreements, and that ZCH agreed that it would transfer to Aspiration any carbon credits that were actually issued during the designated time periods by the Approved Projects, up to the stated limits.  This is entirely consistent with my recollection of our agreement.  Aspiration purchased those yet-to-be-issued credits at a very substantial discount to the market price (approx. 70% less than the market value at the time of the contract)– a discount that reflected the inherent risk in the transaction.  And ZCH unquestionably used, and continues to use, good faith efforts to have the credits issued despite the changes in the protocols and conditions in Brazil.

9.      Furthermore, even if Aspiration were correct that ZCH had an independent obligation to deliver credits even if those credits were not issued by VERRA (and it is not), ZCH still would not yet be in default because the only possible deadline for such a requirement is September 30, 2024.

**The Carbon Credit Projects at Issue**

10.      The contracts between ZCH and Aspiration involve two planned carbon credit projects in Brazil.  The first, known internally as ZCH #1, is a project that is designed to prevent deforestation in the Aripuana River Valley in the Amazon region of Brazil.  That project is registered with VERRA, which is a registry that evaluates planned carbon credit projects and that

issues carbon credits once approved.  ZCH #1 was assigned VERRA registration number 2587. That project remains ongoing, and is described in more detail below.

11.    The second project covered by the Agreements, known internally as ZCH #2, was also a project designed to prevent deforestation in Brazil.

12.    When we first started working on ZCH #1 project, we completed the land tenure work with the Brazilian law firm, Vieira Rezende, and hired a firm called EcoSecurities to draft the project design documentation on the project.  Once we submitted the ZCH #1 project, it became clear that the documentation EcoSecurities had prepared was defective in a number of respects, and we received multiple negative public comments.  We ended up terminating our relationship with EcoSecurities and hiring Radicle to develop the ZCH #1 project instead.  Radicle took over for EcoSecurities in mid-2022, and Radicle drafted new project documentation, including new project feasibility reports documenting the feasibility of the proposed Projects.

**Discovery of Issues Relation to ZCH#2**

13.    Prior to contracting with Aspiration, we hired Radicle to complete Feasibility reports on the ZCH #2 project, and engaged Viera Rezende to complete all legal land tenure due diligence work.  Aspiration thoroughly reviewed and had discussions clarifying the feasibility report with Radicle and the legal teams involved before making the pre-purchase investment.  After we signed the Agreement with Aspiration, we then retained a Brazilian firm called Ecofix Natural Capital ("Ecofix") to complete forest inventory and soil sampling on the parcels of land comprising ZCH #2.

14.    In or around August 2022, after approx. 70% of the inventory work was completed, ZCH became aware of certain possible land boundary issues relating to ZCH #2.  Specifically, it appeared that certain of the parcels overlapped with government land, which may have rendered

4

them unsuitable for the project.  When ZCH learned of such issues, it scheduled a trip to Brazil in late August 2022.  On the visit, representatives of ZCH met with several people with knowledge of the land boundary issues, various attorneys, and a staff member of the environmental secretary's office, all in an effort to figure out either a partnership deal with respect to the overlapping portions, or a methodological exception that would render the project viable.  After several months of exhaustive efforts, ZCH asked its North American attorneys at Carlton Fields to prepare a statement of facts, and shared the final disposition of the ZCH #2 project with Aspiration.  (P-X 28 at 3-6.)

15.    The Radicle Project Feasibility Report had failed to identify this critical piece of information, and no other service provider or related entity had raised the issue with ZCH prior to that point in time.

16.    While ZCH used its best efforts to come up with a solution by which credits could still be generated by ZCH #2, the project ultimately had to be abandoned.

**Delays Pertaining to ZCH#1**

17.    The ZCH #1 Project remains ongoing but has experienced a series of unforeseen delays.  As part of the verification process, the developer of a carbon credit project must meet with local stakeholders affected by the project, including landowners, local government officials, local industry and business leaders, among others.  Here, however, just as we were beginning to engage more actively with the local communities, Brazil began experiencing significant political turmoil as a result of the then-upcoming presidential and gubernatorial elections.  In the summer of 2022, a group of people showed up at one such community meeting and began physically threatening our team.  We had to arrange for an emergency evacuation of those team members from the region. Thereafter, we were informed by FAS, the company which led the local engagement efforts for

ZCH, that they recommended waiting until after the elections were completed to continue any local engagement efforts, partly for safety reasons, and partly because of political paralysis associated with the upcoming elections. (*See* P-X 31.) Once those elections were completed and the government had resumed functioning, however, we were unable to access the site – which is primarily accessible by river – due to low river levels. It was not until March 2023 that we were then able to access the site and continue the site visit process. In fact, on that site visit, we brought with us 2 members of the Aspiration team.

18.     However, two months earlier, an article had appeared in the Guardian newspaper that was critical of the VERRA certification system and that questioned the validity of many of the carbon credits issued by VERRA. That article created significant uncertainty in the industry. That summer, VERRA announced a new set of rules and methodologies for the validation of carbon credit projects. During this time, as I understand it, VERRA generally became much slower to respond, and the contractors with whom we operate were forced to spend significant time getting up to speed on the new requirements, and redoing portions of the work we had already done to satisfy the new rules. This also led to significant unforeseen delays.

19.     After waiting for the political unrest surrounding the presidential election to end and the transition of office to occur in or around January 2023, and following the end of the dry season, ZCH and its team were able to gain access to the land on which ZCH #1 was to be developed in March 2023.

20.     The ZCH #1 project completed the necessary validation and verification body (the "VVB") site work shortly thereafter. And at or around the end of May 2023, the VVB sent to ZCH the round one findings and returned several Corrective Action Requests (the "CARs"), which needed to be addressed prior to issuance of carbon credits. ZCH's team of service providers

worked to address all of the CARs and submitted the answers in or around August 2023.  The VVB hired by ZCH in connection with the development of ZCH #1 is Aster Global Environmental Solutions, Inc. ("Aster Global"), which is a highly reputable company in the carbon credit industry.

**Current Status of the Projects**

21.    In November 2023, Aster Global then provided ZCH with a second set of CARs that contained additional follow-up questions.  Part of the additional CARs given to ZCH mandated updates to the project design document and monitoring plans due to the change in methodologies and standards imposed by VERRA during this time.  ZCH's team of service providers hopes to have the round two submittals completed and to the VVB on or before April 15, 2024.  This is one of the final steps in the certification process.  All that remains after this step is for VERRA to then review the VVB's work and to formally place the project on the exchange.

22.    ZCH has devoted millions of dollars and thousands of hours in connection with its good faith effort to develop ZCH #1 and work to get carbon credits issued as a result of this development.  ZCH is currently working with service providers, attorneys, professionals in the field of sustainability consulting, and other personnel in an effort to get credits issued, all while being forced to defend an erroneous default claim made by Aspiration.  These extensive activities are reflected in documents produced by ZCH in this case, some of which are appended hereto as P-X 28-33.

23.    Service providers we have used in connection with the Projects include: EcoSecurities; Nature Bank; Radicle; EcoFix; FAS; Aster Global; Vieira Rezende Law Firm; Resilient Law Firm; Carlton Fields Law Firm; Infrapar; etc.  These service providers devote significant resources to assessing the status of the project, and assisting ZCH in making its submissions to VERRA, and responding to the questions or issues that VERRA raises.  I am

DocuSign Envelope ID: 41CC37D6-E98E-41BA-09B2-F327A8238968

personally involved in overseeing and doing everything ZCH reasonably can in order to make the process successful.

24.     My best estimate of the amounts spent to date in connection with the Projects to date is approx. $13M alone on the ZCH projects, and in excess of $30M on carbon overall.  ZCH continues to spend significant amounts in order to bring the project to completion.

25.     For all of the foregoing reasons, ZCH has complied with its agreements with Aspiration, and cannot be found to be in default under any circumstances.

Dated: April 2, 2024
       New York, NY

_Joseph Gagliano_
Joseph N. Gagliano