P-X 1

DocuSign Envelope ID: DEBF6D26-F843-4126-8BED-FE8F6AD85F42

**FROM:  ASPIRATION PARTNERS, INC.**, a Delaware corporation (the "**Buyer**")
4551 Glencoe Avenue, Marina del Rey, CA 90292
Phone:          (646) 483-7217
E-mail:          mshuckerow@aspiration.com

**TO:          ZERO CARBON HOLDINGS, LLC**, a Wyoming limited liability company ("**Seller**").
109 E. 17th St. Cheyenne, WY 82001
Phone:          310-993-9952
E-mail:          Jay@Fourthirteenllc.com

Ladies and Gentlemen:

This letter agreement confirms the terms and conditions of the Prepaid Forward Transaction entered into between us on the Trade Date specified below (the "*Transaction*").  This letter agreement constitutes a "*Confirmation*" as referred to in the ISDA Master Agreement (as defined below).

The definitions and provisions contained in the 2006 ISDA Definitions (the "*Definitions*"), as published by the International Swaps and Derivatives Association, Inc. ("*ISDA*"), are incorporated into this Confirmation.  In the event of any inconsistency between the Definitions and this Confirmation, this Confirmation will govern.

This Confirmation evidences a complete and binding agreement between you and us as to the terms of the Transaction.  This Confirmation shall supplement, form a part of, and be subject to, an agreement in the form of the 2002 ISDA Master Agreement as published by ISDA (the "*ISDA Master Agreement*"), as if we had executed an agreement in such form on the Trade Date (but without any Schedule except for the election of (a) New York law as the governing law, (b) U.S. Dollar as the Termination Currency and (c) the provisions set forth in Clause 3 below).  In the event of any inconsistency between the ISDA Master Agreement and this Confirmation, this Confirmation will prevail for purposes of this Transaction.

Capitalized terms used but not defined in this Confirmation have the meanings assigned to them in the Definitions or the ISDA Master Agreement.

## 1.        Prepaid Forward Transaction Terms:

Trade Date:                              February 9, 2022

Effective Date:                          February 9, 2022

Termination Date:                    September 30, 2024 (as may be extended by the Buyer in its
                                                  sole discretion)

| | |
|---|---|
| Prepaid Forward Payment: | On the Prepayment Date, Buyer shall remit the Prepayment Amount to Seller in US Dollars. |
| Prepayment Amount Payer: | Buyer |
| Prepayment Amount: | ▮▮▮▮▮▮ |
| Prepayment Date: | The Effective Date. |
| Physical Settlement: | On or before each Physical Settlement Date, Seller shall deliver or cause to be delivered to the Buyer, Carbon Credits in the relevant Physical Settlement Quantity for such Physical Settlement Date. It being understood that there may be multiple Physical Settlement Dates during each Physical Settlement Calculation Period until the Period 1 Amount or Period 2 Amount, as applicable, is reached.  For the avoidance of doubt, Seller shall cause the Total Quantity to be delivered to Buyer during the Term hereof.  The delivery of any such Carbon Credits shall be in accordance with the then current market practice for delivery of carbon credits issued by the Registry on or about the relevant Physical Settlement Date.  Notwithstanding the foregoing, it is the intent of the parties that Buyer shall acquire all right, title and interest in and to the relevant Carbon Credits immediately upon issuance thereof by the Registry. |
| Physical Settlement 1 Dates: | Means the earlier to occur of: (x) each date on which Carbon Credits are issued by the Registry (each a "***Registry Issuance Date***") during the Physical Settlement 1 Calculation Period; and (y) December 31, 2022 (as may be extended by up to ninety (90) days by mutual agreement of the parties, not to be unreasonably withheld). |
| Physical Settlement 1 Quantity: | The amount of Carbon Credits issued by the Registry on each Registry Issuance Date during the Physical Settlement 1 Calculation Period; *provided, however,* in no event shall the aggregate Physical Settlement 1 Quantity for all Physical Settlement 1 Dates during the Physical Settlement 1 Calculation Period exceed 3,600,000 Carbon Credits (the "***Period 1 Amount***"). |
| Physical Settlement 1 Calculation Period: | The period from, and including, the Effective Date, through, and including, December 31, 2022 (as extended). |

DocuSign Envelope ID: DEBF6D26-F843-4126-8BED-FE9F6AD85F42

| | |
|---|---|
| Physical Settlement 2 Dates: | Means the earlier to occur of: (x) each Registry Issuance Date during the Physical Settlement 2 Calculation Period; and (y) the Termination Date. |
| Physical Settlement 2 Quantity: | The amount of Carbon Credits issued by the Registry on each Registry Issuance Date during the Physical Settlement 2 Calculation Period; *provided, however,* in no event shall the aggregate Physical Settlement 2 Quantity for all Physical Settlement 2 Dates during the Physical Settlement 2 Calculation Period exceed 2,955,556 Carbon Credits (the "***Period 2 Amount***"). |
| Physical Settlement 2 Calculation Period: | The period from the last date of the Physical Settlement 1 Calculation Period through, and including, the Termination Date. |
| Carbon Credits: | Means the carbon credits issued by the Registry and generated by either of the Approved Projects. |
| Approved Projects: | Means (i) the project under development by ZCH associated with the feasibility study Project 2 – Nova Aripuana REDD Feasibility Study, dated as of October 1, 2021, to be validated by the Registry with ZCH as the Project Developer and providing for issuance of Carbon Credits in accordance with the Carbon Standard and (ii) the Zero Carbon Aripuanã River Valley REDD Project 1 with project ID 2587 and the Seller as the Project Developer and providing for the issuance of Carbon Credits in accordance with the Carbon Standard. |
| Carbon Standard: | The standards necessary to meet project requirements for carbon credit issuance set forth by the Registry, including without limitation the Verra VCS Standards. In addition, Seller and all professionals engaged will use best efforts to obtain a CCB accreditation for the Carbon Credit issuance. |
| Project Developer: | The project proponent, developer, or equivalent term used by the Registry to describe the entity or individual holding overall control and responsibility for a project, including the legal right to control and operate project activities. |
| Registry: | Verra |
| Total Quantity: | The sum of the Period 1 Amount and the Period 2 Amount. |

Business Days:                    Los Angeles

Business Day Convention:          Following

Calculation Agent:                Buyer

## 2.     Representations:

(i)     ***Relationship Between Parties.***  Each party will be deemed to represent to the other party on the Trade Date:

(a)     *Non-Reliance***.**  It is acting for its own account, and it has made its own independent decisions to enter into the Transaction and as to whether the Transaction is appropriate or proper for it based upon its own judgment and upon advice from such advisers as it has deemed necessary.  It is not relying on any communication (written or oral) of the other party as investment advice or as a recommendation to enter into the Transaction.   No communication (written or oral) received from the other party shall be deemed to be an assurance or guarantee as to the expected results of the Transaction;

(b)     *Assessment and Understanding***.**  It is capable of assessing the merits of and understanding (on its own behalf or through independent professional advice), and understands and accepts, the terms, conditions and risks of the Transaction.  It is also capable of assuming, and assumes, the risks of the Transaction;

(c)     *Status of Parties***.**  The other party is not acting as a fiduciary for or an adviser to it in respect of the Transaction; and

(d)     *Eligible Contract Participant*.  It is an "eligible contract participant" as defined in the Commodity Exchange Act, as amended (the "***CEA***").

(e)     *Power and Authority*.  It has the full power and authority to enter into this Confirmation and to perform its obligations hereunder, without the need for any consents, approvals or immunities not yet obtained; and

(f)     *No Breach*.  Its execution of this Confirmation and the performance of its obligations hereunder shall not breach any oral or written agreement with any third party.

## 3.     ISDA Master Agreement Terms:

(i)     *Prepaid Transaction.*  Notwithstanding anything in the ISDA Master Agreement to the contrary, for any Fully-Paid Transaction of one party (the "***Fully-Paid Party***"),

the occurrence of an event described in Section 5 of the ISDA Master Agreement with respect to the Fully-Paid Party shall not constitute a Potential Event of Default, Event of Default or Termination Event with respect to any such Fully-Paid Transaction or Fully-Paid Party. The term "Fully-Paid Transaction" shall mean any transaction with respect to which a party has satisfied in full all of its payment obligations under Section 2(a)(i) of the ISDA Master Agreement and shall have no future payment obligations, whether absolute or contingent, under such section with respect to such transaction. For the avoidance of doubt, the condition precedent in Section 2(a)(iii) of the ISDA Master Agreement shall not apply to Fully-Paid Transactions.

(ii) *Transfer.* For purposes of Section 7 of the ISDA Master Agreement the parties hereby agree that with respect to the Seller only, any direct or indirect change of control of Seller (including by way of merger, acquisition, business combination, restructuring, change in more than 50% of the equity interests of Seller, or a change in more than 50% of the board of directors of Seller in any given year) shall be deemed to be a transfer for purposes thereof. Additionally, notwithstanding anything in Section 7 of the ISDA Master Agreement to the contrary, the parties hereby agree that Buyer may: (x) assign all of its rights and obligations under this Transaction to any successor in interest of the Buyer in connection with the sale of all or substantially all of the portion of Buyer's business to which this Transaction relates, or in connection with any merger, acquisition, business combination, or similar transaction; and (y) assign its rights and obligations under this Transaction to one or more Future Vehicles. For purposes hereof, the term "Future Vehicles" means one or more carbon funds, special purpose vehicles or other similar vehicles that Buyer develops or participates in as a partner or other similar participant. This Transaction shall endure to the benefit of and be binding upon the parties and their respective successors and permitted assigns. Any assignment or transfer or purported assignment or transfer in violation of Section 7 of the ISDA Master Agreement (as modified herein) shall be null and void.

**4. Collateral**. As collateral security for the prompt and complete performance when due of their respective obligations under this Confirmation, (i) Seller hereby grants to Buyer a security interest in all of its respective rights with respect to each of the Approved Projects, in each case, including without limitation all rights to control and operate project activities in accordance with Seller's status as Project Developer and its entitlement to up to 8,522,223 Carbon Credits (in each case, whether held by contract or as a partner or limited liability company member or stockholder or other arrangement), wherever located, whether now owned or hereafter acquired, and all proceeds and products thereof and (ii) Four Thirteen, LLC, a Wyoming limited liability company ("*Member*") hereby pledges to Buyer all limited liability company membership interests in Seller (the "*Membership Interests*") (clauses (i) and (ii), collectively, the "*Collateral*"), and each of Seller and Member authorize Buyer to file, or cause to be filed, UCC-1 financing statements in the Office of the Secretary of State of the State of Wyoming. In furtherance of the foregoing grant, Member shall execute a pledge agreement in form reasonably acceptable to Buyer as a condition to Buyer's obligation to remit the Prepayment Amount (the "*Pledge Agreement*") and which Pledge Agreement shall be a Credit Support Document and Member shall be a Credit Support Provider. Member hereby acknowledges that its obligations

hereunder shall not be affected by (a) the failure by Buyer to assert any claim or demand or to enforce any right or remedy against Seller under the provisions of this Confirmation; (b) any rescission, waiver, amendment or modification of, or release from, any of the terms or provisions of this Confirmation; or (c) any other act, omission or delay to do any other act which may or might in any manner or to any extent vary its risk or otherwise operate as a discharge of its obligations hereunder as a matter of law or equity. At any time and from time to time, upon written request of the Buyer, Seller and Member will promptly and fully execute and deliver such further instruments and documents and take such further actions as the Buyer may reasonably request for the purpose of perfecting the lien granted herein, including (i) filing any financing or continuation statements under the Uniform Commercial Code (or other similar laws) in effect in any jurisdiction with respect to the security interests created hereby and (ii) providing prompt written notice to the Buyer of (A) the selection for development of any feasibility studies which might result in a validated project generating carbon credits, (B) the acquisition, directly or indirectly, by the Seller of any Collateral or (C) any contract entered into by the Seller for the purpose of acquiring carbon credits or developing, operating or managing a project that might generate carbon credits. Upon Seller's successful transfer of the Total Quantity of Carbon Credits to Buyer, Buyer shall promptly release any liens or encumbrances and, at the sole cost and expense of Seller, execute and deliver such further instruments and documents and take such further actions as Seller may reasonably request to release any encumbrances or liens.

5.      **Covenants; Additional Representations.**

(a)      Seller shall provide Buyer with executed definitive master services agreements (the "*Definitive MSAs*")with Radicle Group Inc. for the development of the Approved Projects, consistent with the executed Carbon Credit Consulting and Development Master Service Agreement Term Sheets, each dated as of February 5, 2022, made available to Buyer and otherwise in a form reasonably acceptable to Buyer, no later than sixty (60) days following the Effective Date. A failure of Seller to provide such Definitive MSAs to Buyer within such period of time shall constitute an additional Event of Default for purposes of Section 5(a) of the ISDA Master Agreement.

(b)      Seller represents, warrants and covenants to Buyer on the Trade Date and on each date during the Term hereof, that it has full legal and equitable title to the Carbon Credits free and clear of any lien, security interest, conditional sale or other title retention agreement, right of first refusal, covenant, option, warrant, claim, restriction or encumbrance of any kind (collectively, "*Liens*") and fully transferable without claims by third parties and has not sold, transferred, assigned, retired, licensed, disposed of, granted or otherwise created any interest or Lien in such Carbon Credits, other than as contemplated in this Confirmation, and will not do so except in accordance with this Confirmation.

(c)      Member hereby represents, warrants and covenants to Buyer on the Trade Date and on each date during the Term hereof, that it has full legal and equitable title to the Membership Interests free and clear of any Liens and fully transferable without claims by third parties and has not sold, transferred, assigned, retired, licensed, disposed of, granted or otherwise created any interest or Lien in such Membership Interests, as applicable, other than as contemplated in this Confirmation, and will not do so except in accordance with this Confirmation.

(d)      Seller and Member hereby covenant and agree that they shall use good faith efforts to diligently develop and operate the Approved Projects  and they each shall take all actions reasonably required to cause the Registry to issue the Carbon Credits as soon as possible.

*[Signature pages follow]*

DocuSign Envelope ID: DEBF6D26-F843-4126-8BED-FE9F6AD85F42

Please confirm that the foregoing correctly sets forth the terms of our agreement by executing a copy of this Confirmation and returning it to us.

**ASPIRATION PARTNERS, INC.**

By: _Andrei Cherny_
    157C23F4275F4C5...

Name: _Andrei Cherny_

Title: _CEO_

DocuSign Envelope ID: DFBF6D26-5843-4126-9BED-FF8F6AD85F42

**CONFIRMED AND AGREED**
**AS OF THE DATE FIRST ABOVE WRITTEN:**

**ZERO CARBON HOLDINGS, LLC**

By: _Jay Rogers_

Name: Jay Rogers

Title: Chief Executive Officer

**ACKNOWLEDGED AND AGREED AS TO THE**
**PROVISIONS SET FORTH IN CLAUSES 4 AND 5 ABOVE:**

**FOUR THIRTEEN, LLC**

By: _Jay Rogers_

Name: Jay Rogers

Title: Chief Executive Officer