P-X 6

Message

| | |
|---|---|
| **From**: | Robert Lee [rlee@aspiration.com] |
| **Sent**: | 1/24/2022 9:23:36 PM |
| **To**: | matt.hayden@seapurity.us |
| **CC**: | Tate Mill [tmill@aspiration.com]; Jay Rogers [jay@fourthirteenllc.com]; Andrew.hurst@seapurity.us [andrew.hurst@seapurity.us] |
| **Subject**: | Re: Follow-up on Carbon Credits |
| **Attachments**: | Aspiration - ZCH Prepaid Forward Confirmation.DOCX |

Hey all,

Please find for your consideration the attached purchase agreement draft. Happy to set up a follow up call to walk through and address any issues if you see any showstoppers. Note that we'll need to update the Trade Date and Effective Date to reflect the date we sign the agreement - and we'll also want to verbally confirm wire instructions prior to the wire transaction.

Thanks,
Rob

On Mon, Jan 24, 2022 at 10:36 AM <matt.hayden@seapurity.us> wrote:

> Rob,
>
> I trust you all had a good weekend. Please confirm if we will receive a draft of the purchase agreement today. I am available at 949-391-0980 if you need anything.
>
> Thanks
>
> Matt

Aspiration00001240

**FROM:  ASPIRATION PARTNERS, INC.**, a Delaware corporation (the "**Buyer**")
4551 Glencoe Avenue, Marina del Rey, CA 90292
Phone:        (646) 483-7217
E-mail:       mshuckerow@aspiration.com

**TO:     ZERO CARBON HOLDINGS, LLC**, a Wyoming limited liability company ("**Seller**").
109 E. 17th St. Cheyenne, WY 82001
Phone:                    [_____]
Fax:          [_____]
E-mail:                   [_____]

**TO:     413 ENVIRONMENTAL, LLC**, a Wyoming limited liability company ("**413**").
109 E. 17th St. Cheyenne, WY 82001
Phone:                    [_____]
Fax:          [_____]
E-mail:                   [_____]

Ladies and Gentlemen:

This letter agreement confirms the terms and conditions of the Prepaid Forward Transaction entered into between us on the Trade Date specified below (the "*Transaction*").  This letter agreement constitutes a "*Confirmation*" as referred to in the ISDA Master Agreement (as defined below).

The definitions and provisions contained in the 2006 ISDA Definitions (the "*Definitions*"), as published by the International Swaps and Derivatives Association, Inc. ("*ISDA*"), are incorporated into this Confirmation.  In the event of any inconsistency between the Definitions and this Confirmation, this Confirmation will govern.

This Confirmation evidences a complete and binding agreement between you and us as to the terms of the Transaction.  This Confirmation shall supplement, form a part of, and be subject to, an agreement in the form of the 2002 ISDA Master Agreement as published by ISDA (the "*ISDA Master Agreement*"), as if we had executed an agreement in such form on the Trade Date (but without any Schedule except for the election of (a) New York law as the governing law, (b) U.S. Dollar as the Termination Currency and (c) the provisions set forth in Clause 4 below).  In the event of any inconsistency between the ISDA Master Agreement and this Confirmation, this Confirmation will prevail for purposes of this Transaction.

Capitalized terms used but not defined in this Confirmation have the meanings assigned to them in the Definitions or the ISDA Master Agreement.

277334911v.6

Aspiration00001241

## 1.      Prepaid Forward Transaction Terms:

| | |
|---|---|
| Trade Date: | January 21, 2022 |
| Effective Date: | January 21, 2022 |
| Termination Date: | September 30, 2024 (as may be extended by the Buyer in its sole discretion) |
| Prepaid Forward Payment: | On the Prepayment Date, Buyer shall remit the Prepayment Amount to Seller in US Dollars. |
| Prepayment Amount Payer: | Buyer |
| Prepayment Amount: | $29,500,000 |
| Prepayment Date: | The Effective Date. |
| Physical Settlement: | On or before the Physical Settlement Date, Seller shall deliver or cause to be delivered to the Buyer, Carbon Credits in the relevant Quantity for such Physical Settlement Date. The delivery of any such Carbon Credits shall be in accordance with the then current market practice for delivery of carbon credits issued by the Registry on or about the Physical Settlement Date. Notwithstanding the foregoing, Buyer shall acquire all right, title and interest in and to the Carbon Credits immediately upon issuance thereof. |
| Physical Settlement Date: | Means the earlier to occur of: (x) if there is an Approved Project, the date specified by Seller in a written notice to Buyer (which written notice shall be delivered to Buyer at least 10 Business Days prior to the relevant Physical Settlement Date); and (y) the Termination Date. |
| Carbon Credits: | Means the carbon credits issued by the Registry and generated by the Approved Project. |
| Replacement Credits | Means the carbon credits issued by the Registry and generated by the Replacement Project. |
| Approved Project: | The project under development by ZCH associated with the feasibility study Project 2 – Nova Aripuana REDD Feasibility Study, dated as of October 1, 2021, to be validated by the Registry with ZCH as the Project Proponent and providing for issuance of Carbon Credits in accordance with the Carbon Standard. |

Aspiration00001242

| | |
|---|---|
| Replacement Project | The 413 REDD Project on the Registry with project ID number 2586 and 413 as the Project Proponent,[1] providing for issuance of Carbon Credits in accordance with the Carbon Standard. |
| Carbon Standard: | The standards necessary to meet project requirements for carbon credit issuance set forth by the Registry, including without limitation the Verra CCB Standard (unless compliance with such standard is waived by the Buyer in its sole discretion), according to the Climate, Community & Biodiversity Standards v. 3.1. [2] |
| Project Developer | The project proponent, developer, or equivalent term used by the Registry to describe the entity or individual holding overall control and responsibility for a project, including the legal right to control and operate project activities. |
| Registry: | Verra |
| Quantity: | 6,555,556 |
| Business Days: | Los Angeles |
| Business Day Convention: | Following |
| Calculation Agent: | Buyer |

**2.      Representations:**

(i)      ***Relationship Between Parties.***  Each party will be deemed to represent to the other party on the Trade Date:

(a)      *Non-Reliance*.  It is acting for its own account, and it has made its own independent decisions to enter into the Transaction and as to whether the Transaction is appropriate or proper for it based upon its own judgment and upon advice from such advisers as it has deemed necessary.  It is not relying on any communication (written or oral) of the other party as investment advice or as a recommendation to enter into the Transaction.  No communication (written or oral) received from the other party shall be deemed to be an assurance or guarantee as to the expected results of the Transaction;

---

[1] Available at https://registry.verra.org/app/projectDetail/VCS/2586.

[2] Available at https://verra.org/wp-content/uploads/2017/12/CCB-Standards-v3.1_ENG.pdf.

277334911v.6

Aspiration00001243

(b)     *Assessment and Understanding*.  It is capable of assessing the merits of and understanding (on its own behalf or through independent professional advice), and understands and accepts, the terms, conditions and risks of the Transaction.  It is also capable of assuming, and assumes, the risks of the Transaction;

(c)     *Status of Parties*.  The other party is not acting as a fiduciary for or an adviser to it in respect of the Transaction; and

(d)     *Eligible Contract Participant*.  It is an "eligible contract participant" as defined in the Commodity Exchange Act, as amended (the "***CEA***").

(e)     *Power and Authority*.  It has the full power and authority to enter into this Confirmation and to perform its obligations hereunder, without the need for any consents, approvals or immunities not yet obtained; and

(f)     *No Breach*.  Its execution of this Confirmation and the performance of its obligations hereunder shall not breach any oral or written agreement with any third party.

(ii)     Seller represents, warrants and covenants to Buyer on the Trade Date and on the date of each delivery of Carbon Credits or Replacement Credits hereunder (including, without limitation, in accordance with Section 4 hereof) that it has full legal and equitable title to the Carbon Credits and Replacement Credits, as applicable, free and clear of any lien, security interest, conditional sale or other title retention agreement, right of first refusal, covenant, option, warrant, claim, restriction or encumbrance of any kind (collectively, "***Liens***") and fully transferable without claims by third parties and has not sold, transferred, assigned, retired, licensed, disposed of, granted or otherwise created any interest or Lien in such Carbon Credits or Replacement Credits, as applicable, other than as contemplated in this Confirmation, and will not do so except in accordance with this Confirmation.

**3.     ISDA Master Agreement Terms:**

(i)     *Prepaid Transaction.*  Notwithstanding anything in the ISDA Master Agreement to the contrary, for any Fully-Paid Transaction of one party (the "***Fully-Paid Party***"), the occurrence of an event described in Section 5 of the ISDA Master Agreement with respect to the Fully-Paid Party shall not constitute a Potential Event of Default, Event of Default or Termination Event with respect to any such Fully-Paid Transaction or Fully-Paid Party.  The term "Fully-Paid Transaction" shall mean any transaction with respect to which a party has satisfied in full all of its payment obligations under Section 2(a)(i) of the ISDA Master Agreement and shall have no future payment obligations, whether absolute or contingent, under such section with respect to such transaction.  For the avoidance of doubt, the condition precedent in

Aspiration00001244

Section 2(a)(iii) of the ISDA Master Agreement shall not apply to Fully-Paid Transactions.

(ii)     *Transfer.*   For purposes of Section 7 of the ISDA Master Agreement the parties hereby agree that with respect to the Seller only, any direct or indirect change of control of Seller (including by way of merger, acquisition, business combination, restructuring, change in more than 50% of the equity interests of Seller, or a change in more than 50% of the board of directors of Seller in any given year) shall be deemed to be a transfer for purposes thereof.   Additionally, notwithstanding anything in Section 7 of the ISDA Master Agreement to the contrary, the parties hereby agree that Buyer may: (x) assign all of its rights and obligations under this Transaction to any successor in interest of the Buyer in connection with the sale of all or substantially all of the portion of Buyer's business to which this Transaction relates, or in connection with any merger, acquisition, business combination, or similar transaction; and (y) assign its rights and obligations under this Transaction to one or more Future Vehicles.   For purposes hereof, the term "Future Vehicles" means one or more carbon funds, special purpose vehicles or other similar vehicles that Buyer develops or participates in as a partner or other similar participant.  This Transaction shall endure to the benefit of and be binding upon the parties and their respective successors and permitted assigns.   Any assignment or transfer or purported assignment or transfer in violation of Section 7 of the ISDA Master Agreement (as modified herein) shall be null and void.

**4.     Replacement Credits Settlement.**  Seller or 413, as applicable, agrees to deliver or cause to be delivered, all Replacement Credits into the Buyer's account on the Registry, to be held in escrow by the Buyer until the Physical Settlement Date.  If, on the Termination Date, the Approved Project has not generated a quantity of Carbon Credits sufficient to satisfy Seller's obligations hereunder, the Buyer shall acquire all right, title and interest in and to the number of Replacement Credits that, when added to the number of Carbon Credits generated as of such date, the total number of carbon credits held by the Buyer is equal to the Quantity.  Buyer shall thereafter deliver the remaining Replacement Credits (if any) on the Registry as directed by Seller.  The Seller shall indemnify and hold the Buyer harmless for any and all claims, causes of action, liabilities, losses, costs, damages and expenses, including reasonable attorneys' fees, made against or suffered by the Buyer relating in any way to the representation and warranties made in Section 2(ii) above.  In addition, as collateral security for the prompt and complete performance when due of their respective obligations under this Confirmation, Seller and 413 each hereby grant to Buyer a security interest in all of its respective right, title and interest in and to the Replacement Credits, wherever located, whether now owned or hereafter acquired, and all proceeds and products thereof, and authorize Buyer to file, or cause to be filed, UCC-1 financing statements in the Office of the Secretary of State of the State of Wyoming.  413 hereby acknowledges that its obligations hereunder shall not be affected by (a) the failure by Buyer to assert any claim or demand or to enforce any right or remedy against Seller under the provisions of this Confirmation; (b) any rescission, waiver, amendment or modification of, or release from, any of the terms or provisions of this Confirmation; or (c) any other act, omission or delay to do any other act which may or might in any manner or to any extent vary its risk or otherwise operate as a discharge of its obligations hereunder as a matter of law or equity.

277334911v.6

Aspiration00001245

*[Intentionally left blank]*

277334911v.6

Aspiration00001246

Please confirm that the foregoing correctly sets forth the terms of our agreement by executing a copy of this Confirmation and returning it to us.

**ASPIRATION PARTNERS, INC.**


By:_____

Name:_____

Title:_____


**CONFIRMED AND AGREED**
**AS OF THE DATE FIRST ABOVE WRITTEN:**

**ZERO CARBON HOLDINGS, LLC**


By:_____

Name:_____

Title:_____


**413 ENVIRONMENTAL, LLC**


By:_____

Name:_____

Title:_____

277334911v.6

Aspiration00001247