P-X 26

| | |
|---|---|
| Message | |
| From: | Robert Lee [rlee@aspiration.com] |
| Sent: | 1/28/2022 5:11:14 PM |
| To: | matt.hayden@seapurity.us |
| CC: | Tate Mill [tmill@aspiration.com]; Andrew.hurst@seapurity.us [andrew.hurst@seapurity.us]; Jay Rogers [jay@fourthirteenllc.com] |
| Subject: | Re: Follow-up on Carbon Credits |
| Attachments: | Aspiration - ZCH Prepaid Forward Confirmation (Redline 1.28.22).docx; Aspiration - ZCH Prepaid Forward Confirmation (Execution Version).docx |

Hi Matt,

Thanks for the update and we are working hard to get this to execution. I've attached an updated, execution ready draft as well as a redline - there are a couple of new provisions in here that I'd like to call out so that it's not a surprise. One, an "early settlement option" at the end of this year, based on a conservative number of credits being issued by the end of this calendar year, and two, a split payment of 50% upon execution and 50% 30 days after.

We'd also like to clarify that the escrow agent is Carlton Fields law firm - do they have an active account on Verra already to be able to serve in this function, and could you share their account information if so? I've been unable to find their account on the Verra registry.

I'm happy to hop on a call today to walk through those items, or if terms are acceptable, we are ready to sign the attached execution ready version immediately. Let me know!

-Rob

On Thu, Jan 27, 2022 at 9:24 PM <matt.hayden@seapurity.us> wrote:

> Rob and Tate,
>
>
> I know we had covered the transaction collateral and the intent to ensure you are taking no principal investment risk.
>
>
> I am hopeful your senior team understands the position and it would be great to get a confirmation we have a green light to proceed.
>
>
> As a relevant side note, Andrew just got a confirmation on a 500,000 VCU (forestry) sale to a South Korea buyer at $20 that happened yesterday.
>
>
> Regards,

Aspiration00001287

Matt

---

**From:** Jay Rogers <jay@fourthirteenllc.com>
**Sent:** Wednesday, January 26, 2022 9:00 AM
**To:** Robert Lee <rlee@aspiration.com>; matt.hayden@seapurity.us
**Cc:** Tate Mill <tmill@aspiration.com>; andrew.hurst@seapurity.us
**Subject:** RE: Follow-up on Carbon Credits

Gentlemen,

Please find our comments attached, if we are in agreement we will submit to our attorney for final comment.

Jay

---

**From:** Robert Lee <rlee@aspiration.com>
**Sent:** Monday, January 24, 2022 1:24 PM
**To:** matt.hayden@seapurity.us
**Cc:** Tate Mill <tmill@aspiration.com>; Jay Rogers <jay@fourthirteenllc.com>; Andrew.hurst@seapurity.us
**Subject:** Re: Follow-up on Carbon Credits

Hey all,

Please find for your consideration the attached purchase agreement draft. Happy to set up a follow up call to walk through and address any issues if you see any showstoppers. Note that we'll need to update the Trade Date and Effective Date to reflect the date we sign the agreement - and we'll also want to verbally confirm wire instructions prior to the wire transaction.

Thanks,

Rob

On Mon, Jan 24, 2022 at 10:36 AM <matt.hayden@seapurity.us> wrote:

Aspiration00001288

Rob,

I trust you all had a good weekend. Please confirm if we will receive a draft of the purchase agreement today. I am available at 949-391-0980 if you need anything.

Thanks

Matt

Aspiration00001289

**FROM: ASPIRATION PARTNERS, INC.**, a Delaware corporation (the "**Buyer**")
      4551 Glencoe Avenue, Marina del Rey, CA 90292
      Phone:    (646) 483-7217
      E-mail:    mshuckerow@aspiration.com

**TO:**    **ZERO CARBON HOLDINGS, LLC**, a Wyoming limited liability company ("**Seller**").
      109 E. 17th St. Cheyenne, WY 82001
      Phone:    310-993-9952
      ~~Fax:~~
      E-mail:    Jay@Fourthirteenllc.com

Ladies and Gentlemen:

This letter agreement confirms the terms and conditions of the Prepaid Forward Transaction entered into between us on the Trade Date specified below (the "*Transaction*"). This letter agreement constitutes a "*Confirmation*" as referred to in the ISDA Master Agreement (as defined below).

The definitions and provisions contained in the 2006 ISDA Definitions (the "*Definitions*"), as published by the International Swaps and Derivatives Association, Inc. ("*ISDA*"), are incorporated into this Confirmation. In the event of any inconsistency between the Definitions and this Confirmation, this Confirmation will govern.

      This Confirmation evidences a complete and binding agreement between you and us as to the terms of the Transaction. This Confirmation shall supplement, form a part of, and be subject to, an agreement in the form of the 2002 ISDA Master Agreement as published by ISDA (the "*ISDA Master Agreement*"), as if we had executed an agreement in such form on the Trade Date (but without any Schedule except for the election of (a) New York law as the governing law, (b) U.S. Dollar as the Termination Currency and (c) the provisions set forth in Clause 3 below). In the event of any inconsistency between the ISDA Master Agreement and this Confirmation, this Confirmation will prevail for purposes of this Transaction.

      Capitalized terms used but not defined in this Confirmation have the meanings assigned to them in the Definitions or the ISDA Master Agreement.

**1.**    **Prepaid Forward Transaction Terms:**

Trade Date:                            January [28], 2022

Effective Date:                       January [28], 2022

| | |
|---|---|
| Termination Date: | September 30, 2024 (as may be extended by the Buyer in its sole discretion) |
| Prepaid Forward Payment: | On the Prepayment Date 1, Buyer shall remit the Prepayment Amount 1 to Seller in US Dollars and on the Prepayment Date 2, Buyer shall remit the Prepayment Amount 2 to Seller in US Dollars. |
| Prepayment Amount Payer: | Buyer |
| Prepayment Amount 1: | $14,750,000 |
| Prepayment Date 1: | The Effective Date. |
| Prepayment Amount 2: | $14,750,000 |
| Prepayment Date 2: | February [27], 2022. |
| Physical Settlement: | On or before each Physical Settlement Date, Seller shall deliver or cause to be delivered to the Buyer, Carbon Credits in the relevant Quantity for such Physical Settlement Date. It being understood that there may be multiple Physical Settlement Dates during each Physical Settlement Calculation Period until the Period 1 Amount or Period 2 Amount, as applicable, is reached. The delivery of any such Carbon Credits shall be in accordance with the then current market practice for delivery of carbon credits issued by the Registry on or about the relevant Physical Settlement Date. Notwithstanding the foregoing, it is the intent of the parties that Buyer shall acquire all right, title and interest in and to the relevant Carbon Credits immediately upon issuance thereof by the Registry. |
| Physical Settlement 1 Dates: | Means the earlier to occur of: (x) each date on which Carbon Credits are issued by the Registry (each a "**Registry Issuance Date**") during the Physical Settlement 1 Calculation Period; and (y) December 31, 2022. |
| Physical Settlement 1 Quantity: | The amount of Carbon Credits issued by the Registry on each Registry Issuance Date during the Physical Settlement 1 Calculation Period; *provided, however,* in no event shall the aggregate Physical Settlement 1 Quantity for all Physical Settlement 1 Dates during the Physical Settlement 1 Calculation Period exceed [3,600,000] Carbon Credits (the "**Period 1 Amount**"). |

277334911v.12

Aspiration00001291

| | |
|---|---|
| Physical Settlement 1 Calculation Period: | The period from, and including, the Effective Date, through, and including, December 31, 2022. |
| Physical Settlement 2 Dates: | Means the earlier to occur of: (x) each date on which Carbon Credits are issued by the Registry during the Physical Settlement 2 Calculation Period; and (y) the Termination Date. |
| Physical Settlement 2 Quantity: | The amount of Carbon Credits issued by the Registry on each Registry Issuance Date during the Physical Settlement 2 Calculation Period; *provided, however,* in no event shall the aggregate Physical Settlement 2 Quantity for all Physical Settlement 2 Dates during the Physical Settlement 2 Calculation Period exceed [2,955,556] Carbon Credits (the "***Period 2 Amount***"). |
| Physical Settlement 2 Calculation Period: | The period from, and including, January 1, 2023, through, and including, the Termination Date. |
| Carbon Credits: | Means the carbon credits issued by the Registry and generated by the Approved Project. |
| Collateral | Means (i) 100% of the Collateral Credits (as defined below) issued by the Registry with respect to the Collateral Project, and (ii) if the Collateral Credits have not yet been issued by the Registry, cash in USD, it being understood that such cash will be substituted by the Collateral Credits promptly upon the issuance thereof by the Registry. |
| Approved Project: | The project under development by ZCH associated with the feasibility study Project 2 – Nova Aripuana REDD Feasibility Study, dated as of October 1, 2021, to be validated by the Registry with ZCH as the Project Proponent and providing for issuance of Carbon Credits in accordance with the Carbon Standard. |
| Collateral Project | The 413 Environmental, LLC #1 REDD Project on the Registry with project ID number 2586 and 413 Environmental, LLC, a Wyoming limited liability company ("***413***") as the Project Proponent,[1] providing for issuance of |

---

[1] Available at https://registry.verra.org/app/projectDetail/VCS/2586.

277334911v.12

Aspiration00001292

carbon credits in accordance with the Carbon Standard (the "**Collateral Credits**").

| | |
|---|---|
| Carbon Standard: | The standards necessary to meet project requirements for carbon credit issuance set forth by the Registry, including without limitation the Verra VCS Standards. In addition, Seller and all professionals engaged will use best efforts to obtain a CCB accreditation for the Carbon Credit issuance. Buyer may, at its option and upon notice to Seller, choose to forego delivery of any Carbon Credits issued by the Registry that do not include a CCB accreditation, without waiving any of its rights hereunder, and no breach shall have occurred (for the avoidance of doubt, such waived Carbon Credits will not be counted toward the Total Quantity). |
| Project Developer | The project proponent, developer, or equivalent term used by the Registry to describe the entity or individual holding overall control and responsibility for a project, including the legal right to control and operate project activities. |
| Registry: | Verra |
| Total Quantity: | The sum of the Physical Settlement 1 Quantity and the Physical Settlement 2 Quantity. |
| Vintage years: | 2021 will be the first vintage year issued. Vintage years thereafter will be transferred to the Buyer (subject to the Buyer's option described under the section entitled "Carbon Standard" above) until the Quantity is fully satisfied. |
| Business Days: | Los Angeles |
| Business Day Convention: | Following |
| Calculation Agent: | Buyer |

2. **Representations:**

   (i) ***Relationship Between Parties.*** Each party will be deemed to represent to the other party on the Trade Date:

      (a) *Non-Reliance*. It is acting for its own account, and it has made its own independent decisions to enter into the Transaction and as to whether the Transaction is appropriate or proper for it based upon its own judgment and

        upon advice from such advisers as it has deemed necessary. It is not relying on any communication (written or oral) of the other party as investment advice or as a recommendation to enter into the Transaction. No communication (written or oral) received from the other party shall be deemed to be an assurance or guarantee as to the expected results of the Transaction;

(b)    *Assessment and Understanding*. It is capable of assessing the merits of and understanding (on its own behalf or through independent professional advice), and understands and accepts, the terms, conditions and risks of the Transaction. It is also capable of assuming, and assumes, the risks of the Transaction;

(c)    *Status of Parties*. The other party is not acting as a fiduciary for or an adviser to it in respect of the Transaction; and

(d)    *Eligible Contract Participant*. It is an "eligible contract participant" as defined in the Commodity Exchange Act, as amended (the "**CEA**").

(e)    *Power and Authority*. It has the full power and authority to enter into this Confirmation and to perform its obligations hereunder, without the need for any consents, approvals or immunities not yet obtained; and

(f)    *No Breach*. Its execution of this Confirmation and the performance of its obligations hereunder shall not breach any oral or written agreement with any third party.

(ii)    Seller represents, warrants and covenants to Buyer on the Trade Date and on the date of each delivery of Carbon Credits hereunder that it has full legal and equitable title to the Carbon Credits, as applicable, free and clear of any lien, security interest, conditional sale or other title retention agreement, right of first refusal, covenant, option, warrant, claim, restriction or encumbrance of any kind (collectively, "**Liens**") and fully transferable without claims by third parties and has not sold, transferred, assigned, retired, licensed, disposed of, granted or otherwise created any interest or Lien in such Carbon Credits , as applicable, other than as contemplated in this Confirmation, and will not do so except in accordance with this Confirmation.

3.    **ISDA Master Agreement Terms:**

(i)    *Prepaid Transaction.* Notwithstanding anything in the ISDA Master Agreement to the contrary, for any Fully-Paid Transaction of one party (the "**Fully-Paid Party**"), the occurrence of an event described in Section 5 of the ISDA Master Agreement with respect to the Fully-Paid Party shall not constitute a Potential Event of Default, Event of Default or Termination Event with respect to any such Fully-Paid Transaction or Fully-Paid Party. The term "Fully-Paid Transaction" shall mean any transaction with respect to which a party has satisfied in full all of its payment

Page 5 of 8

277334911v.12

Aspiration00001294

obligations under Section 2(a)(i) of the ISDA Master Agreement and shall have no future payment obligations, whether absolute or contingent, under such section with respect to such transaction. For the avoidance of doubt, the condition precedent in Section 2(a)(iii) of the ISDA Master Agreement shall not apply to Fully-Paid Transactions.

(ii) *Transfer.* For purposes of Section 7 of the ISDA Master Agreement the parties hereby agree that with respect to the Seller only, any direct or indirect change of control of Seller (including by way of merger, acquisition, business combination, restructuring, change in more than 50% of the equity interests of Seller, or a change in more than 50% of the board of directors of Seller in any given year) shall be deemed to be a transfer for purposes thereof. Additionally, notwithstanding anything in Section 7 of the ISDA Master Agreement to the contrary, the parties hereby agree that Buyer may: (x) assign all of its rights and obligations under this Transaction to any successor in interest of the Buyer in connection with the sale of all or substantially all of the portion of Buyer's business to which this Transaction relates, or in connection with any merger, acquisition, business combination, or similar transaction; and (y) assign its rights and obligations under this Transaction to one or more Future Vehicles. For purposes hereof, the term "Future Vehicles" means one or more carbon funds, special purpose vehicles or other similar vehicles that Buyer develops or participates in as a partner or other similar participant. This Transaction shall endure to the benefit of and be binding upon the parties and their respective successors and permitted assigns. Any assignment or transfer or purported assignment or transfer in violation of Section 7 of the ISDA Master Agreement (as modified herein) shall be null and void.

**4. Collateral Credits or Cash Settlement.** Seller or 413, as applicable, agrees to deliver or cause to be delivered, (i) all Collateral Credits upon issuance and (ii) if all such Collateral Credits have not yet been issued by the Registry on or before the relevant Prepayment Date, the Prepayment Amounts to be paid by Buyer (it being understood that any cash held in the escrow will be substituted by the Collateral Credits once issued) shall be deposited into a segregated escrow account or account on the Registry, as applicable, held at the Carlton Fields law firm until the Physical Settlement Date. If, by the last day of each Physical Settlement Calculation Period, Carbon Credits equal to the Period 1 Amount or Period 2 Amount, as applicable, have not been delivered to Buyer during the relevant Physical Settlement Calculation Period, the Buyer shall 1) acquire all right, title and interest in and to the number of Collateral Credits that, when added to the number of Carbon Credits delivered to Buyer during such Physical Settlement Calculation Period is equal to Period 1 Amount or Period 2 Amount, as applicable (the amount of such Collateral Credits, the "***Shortfall Amount***") or 2) if Buyer so elects, be paid an amount in cash equal to the Shortfall Amount's cash value (calculated using the OPIS report dated as of the last day of the relevant Physical Settlement Calculation Period). The parties shall cause the escrow agent to promptly transfer any Collateral Credits or cash in accordance with the preceding sentence and any remaining excess Collateral Credits shall be released from the escrow and transferred on the Registry as directed by Seller. 413 represents, warrants and covenants to Buyer on the date of each delivery of Collateral Credits hereunder that it has full legal and equitable title to the Collateral Credits free and clear of any Liens, and fully transferable without claims by third parties and has not sold, transferred, assigned, retired,

licensed, disposed of, granted or otherwise created any interest or Lien in such Collateral Credits other than as contemplated in this Confirmation, and will not do so except in accordance with this Confirmation. The Seller shall indemnify and hold the Buyer harmless for any and all claims, causes of action, liabilities, losses, costs, damages and expenses, including reasonable attorneys' fees, made against or suffered by the Buyer relating in any way to the delivery of the Collateral Credits hereunder. In addition, as collateral security for the prompt and complete performance when due of their respective obligations under this Confirmation, Seller and 413 each hereby grant to Buyer a security interest in all of its respective right, title and interest in and to the Collateral Credits, wherever located, whether now owned or hereafter acquired, and all proceeds and products thereof, and authorize Buyer to file, or cause to be filed, UCC-1 financing statements in the Office of the Secretary of State of the State of Wyoming. 413 hereby acknowledges that its obligations hereunder shall not be affected by (a) the failure by Buyer to assert any claim or demand or to enforce any right or remedy against Seller under the provisions of this Confirmation; (b) any rescission, waiver, amendment or modification of, or release from, any of the terms or provisions of this Confirmation; or (c) any other act, omission or delay to do any other act which may or might in any manner or to any extent vary its risk or otherwise operate as a discharge of its obligations hereunder as a matter of law or equity.

*[Intentionally left blank]*

Aspiration00001296

Please confirm that the foregoing correctly sets forth the terms of our agreement by executing a copy of this Confirmation and returning it to us.

**ASPIRATION PARTNERS, INC.**

By:_____

Name:_____

Title:_____

**CONFIRMED AND AGREED**
**AS OF THE DATE FIRST ABOVE WRITTEN:**

**ZERO CARBON HOLDINGS, LLC**

By:_____

Name:_____

Title:_____

**ACKNOWLEDGED AND AGREED AS TO THE**
**PROVISIONS SET FORTH IN CLAUSE 4 ABOVE:**

**413 ENVIRONMENTAL, LLC**

By:_____

Name:_____

Title:_____

Aspiration00001297

FROM: **ASPIRATION PARTNERS, INC.**, a Delaware corporation (the "**Buyer**")
       4551 Glencoe Avenue, Marina del Rey, CA 90292
       Phone:    (646) 483-7217
       E-mail:    mshuckerow@aspiration.com

TO: **ZERO CARBON HOLDINGS, LLC**, a Wyoming limited liability company ("**Seller**").
       109 E. 17th St. Cheyenne, WY 82001
       Phone:    310-993-9952
       E-mail:    Jay@Fourthirteenllc.com

Ladies and Gentlemen:

This letter agreement confirms the terms and conditions of the Prepaid Forward Transaction entered into between us on the Trade Date specified below (the "***Transaction***"). This letter agreement constitutes a "***Confirmation***" as referred to in the ISDA Master Agreement (as defined below).

The definitions and provisions contained in the 2006 ISDA Definitions (the "***Definitions***"), as published by the International Swaps and Derivatives Association, Inc. ("***ISDA***"), are incorporated into this Confirmation. In the event of any inconsistency between the Definitions and this Confirmation, this Confirmation will govern.

     This Confirmation evidences a complete and binding agreement between you and us as to the terms of the Transaction. This Confirmation shall supplement, form a part of, and be subject to, an agreement in the form of the 2002 ISDA Master Agreement as published by ISDA (the "***ISDA Master Agreement***"), as if we had executed an agreement in such form on the Trade Date (but without any Schedule except for the election of (a) New York law as the governing law, (b) U.S. Dollar as the Termination Currency and (c) the provisions set forth in Clause 3 below). In the event of any inconsistency between the ISDA Master Agreement and this Confirmation, this Confirmation will prevail for purposes of this Transaction.

     Capitalized terms used but not defined in this Confirmation have the meanings assigned to them in the Definitions or the ISDA Master Agreement.

**1.    Prepaid Forward Transaction Terms:**

| | |
|---|---|
| Trade Date: | January 28, 2022 |
| Effective Date: | January 28, 2022 |
| Termination Date: | September 30, 2024 (as may be extended by the Buyer in its sole discretion) |

Page 1 of 8

277334911v.12

Aspiration00001298

| | |
|---|---|
| Prepaid Forward Payment: | On the Prepayment Date 1, Buyer shall remit the Prepayment Amount 1 to Seller in US Dollars and on the Prepayment Date 2, Buyer shall remit the Prepayment Amount 2 to Seller in US Dollars. |
| Prepayment Amount Payer: | Buyer |
| Prepayment Amount 1: | $14,750,000 |
| Prepayment Date 1: | The Effective Date. |
| Prepayment Amount 2: | $14,750,000 |
| Prepayment Date 2: | February 27, 2022. |
| Physical Settlement: | On or before each Physical Settlement Date, Seller shall deliver or cause to be delivered to the Buyer, Carbon Credits in the relevant Quantity for such Physical Settlement Date. It being understood that there may be multiple Physical Settlement Dates during each Physical Settlement Calculation Period until the Period 1 Amount or Period 2 Amount, as applicable, is reached. The delivery of any such Carbon Credits shall be in accordance with the then current market practice for delivery of carbon credits issued by the Registry on or about the relevant Physical Settlement Date. Notwithstanding the foregoing, it is the intent of the parties that Buyer shall acquire all right, title and interest in and to the relevant Carbon Credits immediately upon issuance thereof by the Registry. |
| Physical Settlement 1 Dates: | Means the earlier to occur of: (x) each date on which Carbon Credits are issued by the Registry (each a "***Registry Issuance Date***") during the Physical Settlement 1 Calculation Period; and (y) December 31, 2022. |
| Physical Settlement 1 Quantity: | The amount of Carbon Credits issued by the Registry on each Registry Issuance Date during the Physical Settlement 1 Calculation Period; *provided, however,* in no event shall the aggregate Physical Settlement 1 Quantity for all Physical Settlement 1 Dates during the Physical Settlement 1 Calculation Period exceed 3,600,000 Carbon Credits (the "***Period 1 Amount***"). |
| Physical Settlement 1 Calculation | |

277334911v.12

| | |
|---|---|
| Period: | The period from, and including, the Effective Date, through, and including, December 31, 2022. |
| Physical Settlement 2 Dates: | Means the earlier to occur of: (x) each date on which Carbon Credits are issued by the Registry during the Physical Settlement 2 Calculation Period; and (y) the Termination Date. |
| Physical Settlement 2 Quantity: | The amount of Carbon Credits issued by the Registry on each Registry Issuance Date during the Physical Settlement 2 Calculation Period; *provided, however,* in no event shall the aggregate Physical Settlement 2 Quantity for all Physical Settlement 2 Dates during the Physical Settlement 2 Calculation Period exceed 2,955,556 Carbon Credits (the "***Period 2 Amount***"). |
| Physical Settlement 2 Calculation Period: | The period from, and including, January 1, 2023, through, and including, the Termination Date. |
| Carbon Credits: | Means the carbon credits issued by the Registry and generated by the Approved Project. |
| Collateral | Means (i) 100% of the Collateral Credits (as defined below) issued by the Registry with respect to the Collateral Project, and (ii) if the Collateral Credits have not yet been issued by the Registry, cash in USD, it being understood that such cash will be substituted by the Collateral Credits promptly upon the issuance thereof by the Registry. |
| Approved Project: | The project under development by ZCH associated with the feasibility study Project 2 – Nova Aripuana REDD Feasibility Study, dated as of October 1, 2021, to be validated by the Registry with ZCH as the Project Proponent and providing for issuance of Carbon Credits in accordance with the Carbon Standard. |
| Collateral Project | The 413 Environmental, LLC #1 REDD Project on the Registry with project ID number 2586 and 413 Environmental, LLC, a Wyoming limited liability company ("***413***") as the Project Proponent,[1] providing for issuance of carbon credits in accordance with the Carbon Standard (the "***Collateral Credits***"). |

---

[1] Available at https://registry.verra.org/app/projectDetail/VCS/2586.

277334911v.12

| | |
|---|---|
| Carbon Standard: | The standards necessary to meet project requirements for carbon credit issuance set forth by the Registry, including without limitation the Verra VCS Standards. In addition, Seller and all professionals engaged will use best efforts to obtain a CCB accreditation for the Carbon Credit issuance. Buyer may, at its option and upon notice to Seller, choose to forego delivery of any Carbon Credits issued by the Registry that do not include a CCB accreditation, without waiving any of its rights hereunder, and no breach shall have occurred (for the avoidance of doubt, such waived Carbon Credits will not be counted toward the Total Quantity). |
| Project Developer | The project proponent, developer, or equivalent term used by the Registry to describe the entity or individual holding overall control and responsibility for a project, including the legal right to control and operate project activities. |
| Registry: | Verra |
| Total Quantity: | The sum of the Physical Settlement 1 Quantity and the Physical Settlement 2 Quantity. |
| Vintage years: | 2021 will be the first vintage year issued. Vintage years thereafter will be transferred to the Buyer (subject to the Buyer's option described under the section entitled "Carbon Standard" above) until the Quantity is fully satisfied. |
| Business Days: | Los Angeles |
| Business Day Convention: | Following |
| Calculation Agent: | Buyer |

2. **Representations:**

   (i) ***Relationship Between Parties.*** Each party will be deemed to represent to the other party on the Trade Date:

   (a) *Non-Reliance.* It is acting for its own account, and it has made its own independent decisions to enter into the Transaction and as to whether the Transaction is appropriate or proper for it based upon its own judgment and upon advice from such advisers as it has deemed necessary. It is not relying on any communication (written or oral) of the other party as investment

|     |     |     |
| --- | --- | --- |
|     |     | advice or as a recommendation to enter into the Transaction. No communication (written or oral) received from the other party shall be deemed to be an assurance or guarantee as to the expected results of the Transaction; |
|     | (b) | *Assessment and Understanding*. It is capable of assessing the merits of and understanding (on its own behalf or through independent professional advice), and understands and accepts, the terms, conditions and risks of the Transaction. It is also capable of assuming, and assumes, the risks of the Transaction; |
|     | (c) | *Status of Parties*. The other party is not acting as a fiduciary for or an adviser to it in respect of the Transaction; and |
|     | (d) | *Eligible Contract Participant*. It is an "eligible contract participant" as defined in the Commodity Exchange Act, as amended (the "**CEA**"). |
|     | (e) | *Power and Authority*. It has the full power and authority to enter into this Confirmation and to perform its obligations hereunder, without the need for any consents, approvals or immunities not yet obtained; and |
|     | (f) | *No Breach*. Its execution of this Confirmation and the performance of its obligations hereunder shall not breach any oral or written agreement with any third party. |

(ii) Seller represents, warrants and covenants to Buyer on the Trade Date and on the date of each delivery of Carbon Credits hereunder that it has full legal and equitable title to the Carbon Credits, as applicable, free and clear of any lien, security interest, conditional sale or other title retention agreement, right of first refusal, covenant, option, warrant, claim, restriction or encumbrance of any kind (collectively, "***Liens***") and fully transferable without claims by third parties and has not sold, transferred, assigned, retired, licensed, disposed of, granted or otherwise created any interest or Lien in such Carbon Credits, as applicable, other than as contemplated in this Confirmation, and will not do so except in accordance with this Confirmation.

**3.   ISDA Master Agreement Terms:**

(i)   *Prepaid Transaction.* Notwithstanding anything in the ISDA Master Agreement to the contrary, for any Fully-Paid Transaction of one party (the "***Fully-Paid Party***"), the occurrence of an event described in Section 5 of the ISDA Master Agreement with respect to the Fully-Paid Party shall not constitute a Potential Event of Default, Event of Default or Termination Event with respect to any such Fully-Paid Transaction or Fully-Paid Party. The term "Fully-Paid Transaction" shall mean any transaction with respect to which a party has satisfied in full all of its payment obligations under Section 2(a)(i) of the ISDA Master Agreement and shall have no future payment obligations, whether absolute or contingent, under such section with

Aspiration00001302

|     | respect to such transaction. For the avoidance of doubt, the condition precedent in Section 2(a)(iii) of the ISDA Master Agreement shall not apply to Fully-Paid Transactions. |
|-----|---|
| (ii) | *Transfer.* For purposes of Section 7 of the ISDA Master Agreement the parties hereby agree that with respect to the Seller only, any direct or indirect change of control of Seller (including by way of merger, acquisition, business combination, restructuring, change in more than 50% of the equity interests of Seller, or a change in more than 50% of the board of directors of Seller in any given year) shall be deemed to be a transfer for purposes thereof. Additionally, notwithstanding anything in Section 7 of the ISDA Master Agreement to the contrary, the parties hereby agree that Buyer may: (x) assign all of its rights and obligations under this Transaction to any successor in interest of the Buyer in connection with the sale of all or substantially all of the portion of Buyer's business to which this Transaction relates, or in connection with any merger, acquisition, business combination, or similar transaction; and (y) assign its rights and obligations under this Transaction to one or more Future Vehicles. For purposes hereof, the term "Future Vehicles" means one or more carbon funds, special purpose vehicles or other similar vehicles that Buyer develops or participates in as a partner or other similar participant. This Transaction shall endure to the benefit of and be binding upon the parties and their respective successors and permitted assigns. Any assignment or transfer or purported assignment or transfer in violation of Section 7 of the ISDA Master Agreement (as modified herein) shall be null and void. |

4. **Collateral Credits or Cash Settlement.** Seller or 413, as applicable, agrees to deliver or cause to be delivered, (i) all Collateral Credits upon issuance and (ii) if all such Collateral Credits have not yet been issued by the Registry on or before the relevant Prepayment Date, the Prepayment Amounts to be paid by Buyer (it being understood that any cash held in the escrow will be substituted by the Collateral Credits once issued) shall be deposited into a segregated escrow account or account on the Registry, as applicable, held at the Carlton Fields law firm until the Physical Settlement Date. If, by the last day of each Physical Settlement Calculation Period, Carbon Credits equal to the Period 1 Amount or Period 2 Amount, as applicable, have not been delivered to Buyer during the relevant Physical Settlement Calculation Period, the Buyer shall 1) acquire all right, title and interest in and to the number of Collateral Credits that, when added to the number of Carbon Credits delivered to Buyer during such Physical Settlement Calculation Period is equal to Period 1 Amount or Period 2 Amount, as applicable (the amount of such Collateral Credits, the "***Shortfall Amount***") or 2) if Buyer so elects, be paid an amount in cash equal to the Shortfall Amount's cash value (calculated using the OPIS report dated as of the last day of the relevant Physical Settlement Calculation Period). The parties shall cause the escrow agent to promptly transfer any Collateral Credits or cash in accordance with the preceding sentence and any remaining excess Collateral Credits shall be released from the escrow and transferred on the Registry as directed by Seller. 413 represents, warrants and covenants to Buyer on the date of each delivery of Collateral Credits hereunder that it has full legal and equitable title to the Collateral Credits free and clear of any Liens, and fully transferable without claims by third parties and has not sold, transferred, assigned, retired, licensed, disposed of, granted or otherwise created any interest or Lien in such Collateral Credits other than as contemplated in this Confirmation, and will not do so except in accordance with

this Confirmation. The Seller shall indemnify and hold the Buyer harmless for any and all claims, causes of action, liabilities, losses, costs, damages and expenses, including reasonable attorneys' fees, made against or suffered by the Buyer relating in any way to the delivery of the Collateral Credits hereunder. In addition, as collateral security for the prompt and complete performance when due of their respective obligations under this Confirmation, Seller and 413 each hereby grant to Buyer a security interest in all of its respective right, title and interest in and to the Collateral Credits, wherever located, whether now owned or hereafter acquired, and all proceeds and products thereof, and authorize Buyer to file, or cause to be filed, UCC-1 financing statements in the Office of the Secretary of State of the State of Wyoming. 413 hereby acknowledges that its obligations hereunder shall not be affected by (a) the failure by Buyer to assert any claim or demand or to enforce any right or remedy against Seller under the provisions of this Confirmation; (b) any rescission, waiver, amendment or modification of, or release from, any of the terms or provisions of this Confirmation; or (c) any other act, omission or delay to do any other act which may or might in any manner or to any extent vary its risk or otherwise operate as a discharge of its obligations hereunder as a matter of law or equity.

*[Intentionally left blank]*

Please confirm that the foregoing correctly sets forth the terms of our agreement by executing a copy of this Confirmation and returning it to us.

**ASPIRATION PARTNERS, INC.**

By:_____

Name:_____

Title:_____

**CONFIRMED AND AGREED
AS OF THE DATE FIRST ABOVE WRITTEN:**

**ZERO CARBON HOLDINGS, LLC**

By:_____

Name:_____

Title:_____

**ACKNOWLEDGED AND AGREED AS TO THE
PROVISIONS SET FORTH IN CLAUSE 4 ABOVE:**

**413 ENVIRONMENTAL, LLC**

By:_____

Name:_____

Title:_____