UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------X

:

ZERO CARBON HOLDINGS, LLC and FOUR :
THIRTEEN, LLC,
:
:
                 Plaintiffs,     :             23-cv-5262 (LJL)
:
        -v-            :      OPINION AND ORDER
:
ASPIRATION PARTNERS, INC.,
:
:
                 Defendant.   :
:

------------------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:__7/15/2024__

LEWIS J. LIMAN, United States District Judge:

      Defendant Aspiration Partners, Inc. ("Aspiration" or "Defendant") moves, pursuant to

Federal Rule of Civil Procedure 54(d)(2), for an order awarding it attorneys' fees of $627,789.50

and costs of $24,848.14 incurred in defending against the claims Plaintiffs Zero Carbon

Holdings, LLC ("ZCH") and Four Thirteen Partners ("413" and with ZCH, "Plaintiffs").  Dkt.

No. 74.  For the following reasons, the motion is granted as modified.

**BACKGROUND AND PROCEDURAL HISTORY**

      On May 1, 2024, the Court issued an Opinion and Order, ruling for Defendant on its

counterclaim seeking a declaratory judgment that ZCH defaulted on its obligations under an

International Swaps and Derivative Association Master Agreement ("ISDA Agreement") and

Confirmation Letter ("Confirmation" and with the ISDA Agreement, the "Prepaid Forward

Agreement"), and that an "Event of Default" as defined in the Equity Pledge Agreement had

occurred, entitling Defendant to its contractual remedies and to exercise its collateral rights under

the Pledge Agreement it had entered into with 413.  Dkt. No. 71.  The Court concluded that a

default had occurred due to ZCH's failure to deliver 316 million carbon credits as required by the

Prepaid Forward Agreement and that such default entitled Defendant to exercise its collateral rights. *Id.* at 1, 58. The Clerk of Court entered judgment that same day, stating that for reasons stated in the Court's May 1, 2024 Opinion and Order, a declaratory judgment was entered in favor of Defendant "finding that an Event of Default has occurred due to Plaintiffs' failure to deliver 3,600,000 carbon credits as required by the Confirmation, which entitles Aspiration to exercise its rights contemplated by the Confirmation and the Equity Pledge Agreement." Dkt. No. 72.

On May 15, 2024, Defendant filed this motion for attorneys' fees under Federal Rule of Civil Procedure 54, seeking an award of $611,949.50 in attorneys' fees and $24,848.14 in costs, for a total award of $636,797.64. Dkt. Nos. 74, 75 at 1. Defendant's motion is founded upon Section 11 of the ISDA Agreement, which Defendant entered into with ZCH. Dkt. No. 75 at 3. Section 11 of the ISDA Agreement provides, in pertinent part:

> 11.    Expenses
>
> A Defaulting Party will on demand indemnify and hold harmless the other party for and against all reasonable out-of-pocket expenses, including legal fees, execution fees and Stamp Tax, incurred by such other party by reason of enforcement and protection of its rights under this Agreement or any Credit Support Document to which the Defaulting Party is a party or by reason of the early termination of any Transaction, including, but not limited to, costs of collection.

Dkt. No. 35-1 at 19.

Plaintiffs opposed the motion on the limited grounds that (1) 413 did not have, and therefore did not violate, an obligation to deliver carbon credits and was not a party to the ISDA Agreement and did not take on any indemnity obligation under that agreement and thus should not be subject to an award of attorneys' fees, Dkt. No. 76 at 1–4; and (2) as to ZCH, Defendant had not adequately supported the reasonableness of its fee request, as Defendant had redacted all descriptions of tasks completed for the time billed in their original submission, *id.* at 4–5.

Plaintiffs argued that "any order issued by the Court awarding fees and costs should specify that that obligation belongs only to ZCH and not 413" and that "the Court should require that the appropriate records be provided in order to enable the Court to determine whether the fees charged are, in fact, reasonable." *Id.* at 5.

On May 31, 2024, the Court issued an order noting that Defendant's motion had failed to provide any definite information regarding the way in which the time for which it was seeking a fee award was spent, and permitting Defendant to include such definite information in its reply brief, due on June 5, 2024. Dkt. No. 77 at 1–2. The Court permitted Plaintiffs to file a sur-reply brief by June 14, 2024 limited to the reasonableness of Defendant's attorneys' fee request. *Id.* at 2.

Defendant filed a reply memorandum of law on June 5, 2024. Dkt. No. 78. It agreed that "[i]nasmuch as the [Prepaid Forward] Agreement did not impose a delivery obligation on 413 and 413 was not a 'Defaulting Party' under Section 6(a) of the ISDA Agreement in relation to the 'Event of Default' that this Court found, 413 does not bear liability for an award of costs, including reasonable attorneys' fees, to Aspiration pursuant to Section 11 of the ISDA Agreement." *Id.* at 1–2.[1] It also submitted unredacted time records, Dkt. No. 78-1, and with those time records, revised its attorneys' fees request to seek $627,789.50, rather than the previously-requested $611,949.50 "to account for three time entries that have been removed and to account for the additional time necessary, among other tasks, to prepare and file the instant

---

[1] Defendant noted that 413 remains liable related to Aspiration's exercise of its rights and remedies under Article 9 of the Uniform Commercial Code ("UCC"). Dkt. No. 78 at 2 n.2; *see* Dkt. No. 8-4 ¶ 8(f) (providing that Aspiration would "have all rights and remedies of a secured party under Article 9 of the UCC"). Defendant, however, has not made any requests for attorneys' fees or costs under the Equity Pledge Agreement.

motion," Dkt. No. 78 at 2 n.2.[2]  Defendant's amount requested for costs remained the same at

$24,848.14, making the total amount of attorneys' fees and costs requested $652,637.64.

Plaintiffs did not file a sur-reply.  *See* Dkt. No. 79.

## DISCUSSION

Federal Rule of Civil Procedure 54(d)(2) provides that "[a] claim for attorneys' fees and

related nontaxable expenses" may be made by motion unless the substantive law requires those

fees to be proved at trial as an element of damages and permits such motion to be made no later

than 14 days after entry of judgment.  Fed. R. Civ. P. 54(d)(2); *see Veltri v. Bldg. Serv. 32B-J*

*Pension Fund*, 2004 WL 856329, at *1 (S.D.N.Y. Apr. 20, 2004) ("Although a Notice of Appeal

normally divests the district court of jurisdiction, a district court retains jurisdiction to decide the

issue of attorneys' fees and other collateral matters notwithstanding a pending appeal."); *see also*

*Tancredi v. Metro. Life Ins. Co.*, 378 F.3d 220, 225 (2d Cir. 2004).[3]

## I.    Defendant's Entitlement to Attorneys' Fees

"Under the 'American Rule' a prevailing party is ordinarily not entitled to attorneys' fees

except where expressly provided by statute or contract."  *Westchester Fire Ins. Co. v. Massamont*

*Ins. Agency, Inc.*, 420 F. Supp. 2d 223, 227 (S.D.N.Y. 2005); *see also Hooper Assocs., Ltd. v.*

*AGS Computs., Inc.*, 548 N.E.2d 903, 904 (N.Y. 1989) ("Under the general rule, attorney's fees

are incidents of litigation and a prevailing party may not collect them from the loser unless  an

award is authorized by agreement between the parties, statute or court rule.").  "Under New York

law, a prevailing party may recover attorney's fees from the losing party where authorized

by . . . agreement."  *Wistron NeWeb Corp. v. Genesis Networks Telecom Servs., LLC*, 2023 WL

---

[2] The ISDA Agreement provides that the prevailing party may also recover "costs of collection," Dkt. No. 35-1 at 19, and thus this increase is permissible, *see, e.g.*, *Lancer Indem. Co. v. JKH Realty Grp., LLC*, 8 N.Y.S.3d 356, 358 (2d Dep't 2015).
[3] Plaintiffs do not challenge the timeliness of Defendant's fee request.

5211352, at *5 (S.D.N.Y. Aug. 14, 2023) (quoting *Varbero v. Belesis*, 2020 WL 5849516, at *7 (S.D.N.Y. Oct. 1, 2020)); *N.Y.C. Dist. Council of Carpenters v. JFD Sales Consulting Servs. Corp.*, 2017 WL 4736742, at *2 (S.D.N.Y. Oct. 19, 2017) ("[Under New York law,] a contractual provision for the payment of [attorneys' fees and costs] provides a basis to award them."); *Constellation Newenergy, Inc. v. Om Vegetable, Inc.*, 2022 WL 334707, at *5 (S.D.N.Y. Aug. 12, 2022) (awarding attorneys' fees in breach of contract action based upon contractual provision); *see also U.S. Underwriters Ins. Co. v. City Club Hotel, LLC*, 822 N.E.2d 777, 779 (N.Y. 2004).  However, a court applying New York law "should not infer a party's intention to provide counsel fees as damages for a breach of contract unless the intention to do so is unmistakably clear from the language of the contract." *AT&T Corp. v. Publ'g Concepts L.P.*, 2010 WL 1191380, at *5 (S.D.N.Y. Mar. 29, 2010) (Chin, J.) (quoting *Oscar Gruss & Son, Inc. v. Hollander*, 337 F.3d 186, 199 (2d Cir. 2003)); *see also NetJets Aviation, Inc. v. LHC Commc'ns, LLC*, 537 F.3d 168, 175 (2d Cir. 2008) ("Under New York law, a contract that provides for an award of reasonable attorneys' fees to the prevailing party in an action to enforce the contract is enforceable if the contractual language is sufficiently clear.").  "In that light, '[t]o ensure that fees are not awarded in the absence of an express agreement, the courts have interpreted such provisions strictly.'" *Wiston NeWeb Corp.*, 2023 WL 5211352, at *5 (quoting *Nationwide Auction Co. v. Lynn*, 1996 WL 148489, at *9 (S.D.N.Y. Apr. 1, 1996)).

Defendant is entitled to an award of reasonable attorneys' fees and costs as against ZCH. There is no dispute that ZCH is a Defaulting Party under Section 6(a) of the ISDA Agreement. Dkt. No. 35-1 ¶ 6(a).  An Event of Default under Section 5 of the ISDA Agreement is defined to include the failure of a party to "make, when due, any . . . delivery under Section 2(a)(i) or Section 9(h)(2) or (4) required to be made," *id.* ¶ 5(a)(i), and Section 2(a)(i) requires each party

to make the "delivery specified in each Confirmation," *id.* ¶ 2(a)(i). As the Court explained in its Opinion, Paragraph 1 of the Confirmation required ZCH to deliver 3,600,000 Carbon Credits by the conclusion of the Physical Settlement 1 Date. Dkt. No. 71. ZCH failed to do so, which constituted an "Event of Default." *Id.* at 58. Accordingly, ZCH, as the party required to make the delivery, is the "Defaulting Party." *Id.*

By the same token, however, 413 is not a Defaulting Party and is not required by Section 11 of the ISDA Agreement to indemnify Defendant for its expenses. Section 11 of the ISDA Agreement is clear and unambiguous. *See, e.g.*, *L. Debenture Tr. Co. of N.Y. v. Maverick Tube Corp.*, 595 F.3d 458, 464 (2d Cir. 2010). The obligation to indemnify rests on the Defaulting Party, but only on the Defaulting Party. 413 had no obligation under the Confirmation to deliver Carbon Credits and thus was not in default with respect to the obligation to deliver Carbon Credits. It thus has no obligation under Section 11 to indemnify Defendant. In short, Defendant is entitled to seek attorneys' fees from ZCH, but not 413.[4]

"[T]here is an implied term under New York law that where a contract awards a party the right to attorneys' fees and costs, such fees and costs 'must be reasonable.'" *UMB Bank, Nat'l Ass'n v. Bluestone Coke, LLC*, 2021 WL 3292519, at *5 (S.D.N.Y. Aug. 2, 2021) (quoting *Hack v. Stang*, 2015 WL 5139128, at *8 (S.D.N.Y. Sept. 1, 2015) (Nathan, J.)); *see also F.H. Krear & Co. v. Nineteen Named Trs.*, 810 F.2d 1250, 1263 (2d Cir. 1987) (holding that, under New York

---

[4] Although Defendant is entitled to recover attorneys' fees only from ZCH, the work done in defense of the claims asserted by 413 was "inextricably intertwined" with the work done in defense of the claims by ZCH. *Reed v. A.W. Lawrence & Co.*, 95 F.3d 1170, 1183 (2d Cir. 1996); *see also Flatiron Acquisition Vehicle, LLC v. CSE Mortg. LLC*, 2022 WL 413229, at *12 (S.D.N.Y. Feb. 9, 2022). The claims "involve a common core of facts," and there is no discernable difference between the claims of ZCH and the claims of 413, which were brought jointly. In addition, Aspiration's counterclaim, upon which it also prevailed, was against both ZCH and 413. Accordingly, the Court reviews the fee request without distinguishing between the work done in defeating ZCH's claim and that done in defending against 413.

law, "when a contract provides that in the event of litigation the losing party will pay the attorneys' fees of the prevailing party, the court will order the losing party to pay whatever amounts have been expended by the prevailing party, so long as those amounts are not unreasonable"); *Coniglio v. Regan*, 588 N.Y.S.2d 888, 889 (2d Dep't 1992) ("Attorneys' fees unilaterally fixed by contract are no less subject to the test of reasonableness than are attorneys' fees which are awarded by the court."). Under New York law, a party seeking a fee "bears the burden of showing the reasonableness of the fee by providing definite information regarding the way in which time was spent." *Crowhurst v. Szczucki*, 2019 WL 6122645, at *4 (S.D.N.Y. Nov. 19, 2019) (quoting *Flemming v. Barnwell Nursing Home & Health Facilities, Inc.*, 865 N.Y.S.2d 706, 708 (3d Dep't 2008), *aff'd*, 938 N.E.2d 937 (N.Y. 2010)), *report and recommendation adopted*, 2020 WL 133509 (S.D.N.Y. Jan. 11, 2020). "In addition, under New York Law, '[i]t is settled that the award of fees must be predicated upon a 'proper and sufficient affidavit of services.'" *Id.* (quoting *Bankers Fed. Sav. Bank FSB v. Off W. Broadway Devs.*, 638 N.Y.S.2d 72, 74 (1st Dep't 1996)) (internal quotations and citations omitted); *see also SO/Bluestar, LLC v. Canarsie Hotel Corp.*, 825 N.Y.S.2d 80, 82 (2d Dep't 2006).

## II.    Reasonableness of Attorneys' Fees

Defendant was represented by Whiteford, Taylor & Preston, L.L.P. ("Whiteford") in this action. In support of its request, Defendant has submitted contemporaneous time records that show "for each attorney, the date, the hours expended, and the nature of the work done." *N.Y. State Ass'n for Retarded Child., Inc. v. Carey*, 711 F.2d 1136, 1148 (2d Cir. 1983).[5] Plaintiffs have not challenged the reasonableness of the hourly rates or of the time spent on the litigation.

---

[5] "The Second Circuit has held that the stringent standards applicable to fee requests under federal statute give way in diversity cases to the state court rule that 'favor[s] . . . wider trial court discretion in evaluating fee petitions.'" *UMB Bank*, 2021 WL 3292519, at *8 (quoting *Riordan v. Nationwide Mut. Fire Ins. Co.*, 977 F.2d 47, 53 (2d Cir. 1992)). The time records

As a general matter, the "starting point" and "lodestar" in analyzing whether claimed attorneys' fees are appropriate is "the product of a reasonable hourly rate and the reasonable number of hours required by the case." *Milea v. Metro-North R.R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011); *see also Lilly v. City of New York*, 934 F.3d 222, 227–34 (2d Cir. 2019) (discussing calculation of reasonable hourly rates and reasonable number of hours expended); *Matakov v. Kel-Tech Const., Inc.*, 924 N.Y.S.2d 344, 346 (1st Dep't 2011). The party seeking fees bears the burden of demonstrating that its requested hours and hourly rates are reasonable, and must provide a court with sufficient information to assess the fee application. *See, e.g.*, *Allende v. Unitech Design, Inc.*, 783 F. Supp. 2d 509, 512–13 (S.D.N.Y. 2011); *Flemming*, 865 N.Y.S.2d at 708. This approach is intended to "produce[] an award that *roughly* approximates the fee that the prevailing attorney would have received if he or she had been representing a paying client who was billed by the hour in a comparable case." *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 551 (2010) (emphasis in original); *see also Czymmek v. Fenstermaker*, 2024 WL 1309316, at *2 (S.D.N.Y. Mar. 26, 2024).

The resolution of an application for an award of attorneys' fees "should not result in a second major litigation." *Shapiro v. Kurtzman*, 199 N.Y.S.3d 402, 412 (N.Y. Sup. Ct. 2023) (quoting *Fox v. Vice*, 563 U.S. 826, 838 (2011)). "The determination of reasonable attorney's fee is left to the sound discretion of the trial court." *RMP Cap. Corp. v. Victory Jet, LLC*, 32 N.Y.S.3d 231, 236 (2d Dep't 2016); *see also Fisher v. SD Prot. Inc*., 948 F.3d 593, 606 (2d Cir. 2020). A district court may arrive at that conclusion through a detailed examination of the fee application. *Marion S. Mishkin L. Off. v. Lopalo*, 767 F.3d 144, 150 (2d Cir. 2014). However, a "district court is not obligated to undertake a line-by-line review of [an] extensive fee

_____

would satisfy the federal standard. *A fortiori*, they satisfy the standards under New York law.

application.  It may, instead, 'exercise its discretion and use a percentage deduction as a practical means of trimming fat.'"  *Id.* (quoting *McDonald ex rel. Prendergast v. Pension Plan of the NYSA–ILA Pension Tr. Fund*, 450 F.3d 91, 96 (2d Cir. 2006)); *see Francis v. Atl. Infiniti, Ltd.*, 2012 WL 398769, at *9 (N.Y. Sup. Ct. Feb. 7, 2012) (same).  "Using this form of 'rough justice,' district courts in [this] Circuit regularly employ percentage reductions as an efficient means of reducing excessive fee applications."  *Lopalo*, 767 F.3d at 150 (collecting cases).

### A.    Hourly Rates

The Second Circuit has instructed that the focus is "on setting a reasonable hourly rate, taking account of all case-specific variables."  *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany & Albany Bd. of Elections*, 522 F.3d 182, 189 (2d Cir. 2008).  "The reasonable hourly rate is the rate a paying client would be willing to pay," bearing in mind "that a reasonable, paying client wishes to spend the minimum necessary to litigate the case effectively."  *Id.* at 190.  When an attorney's requested hourly rate is higher than rates found to be reasonable in the relevant market, the court may reduce the requested rate.  *See Savino v. Comput. Credit, Inc.*, 164 F.3d 81, 87 (2d Cir. 1998).

A reasonable hourly rate is one "in line with . . . prevailing [rates]" in the district where the court sits "for similar services by lawyers of reasonably comparable skill, expertise and reputation."  *See Prendergast*, 450 F.3d at 96 (quoting *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984)); *see also Orser v. Wholesale Fuel Distribs-CT, LLC*, 108 N.Y.S.3d 675, 682 (N.Y. Sup. Ct. 2018) ("The Court will compare the hourly rate claimed by counsel for the prevailing party to the rate that is customarily charged for similar services by counsel with like experience and skill to assess the reasonableness of the claimed hourly rate."); *Quill v. Cathedral Corp.*, 659 N.Y.S.2d 919, 920 (3d Dep't 1997).  Courts also "look to the area of legal practice at issue," because "legal markets are today so interconnected that it is no longer meaningful, in assessing a

9

reasonable rate, to look at geographic location alone." *Hong v. Mommy's Jamaican Mkt. Corp.*,

2024 WL 1242507, at *4 (S.D.N.Y. Mar. 21, 2024), *reconsideration denied*, 2024 WL 2214309

(S.D.N.Y. May 16, 2024).  In setting a reasonable hourly rate, courts applying New York law

consider, *inter alia*, the "*Johnson* factors" enumerated in *Johnson v. Georgia Highway Express,*

*Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974), *abrogated on other grounds by Blanchard v.*

*Bergeron*, 489 U.S. 87, 92–93 (1989).  *See Kahlil v. Original Old Homestead Rest., Inc.*, 657 F.

Supp. 2d 470, 475 (S.D.N.Y. 2009) (citing *Arbor Hill*, 522 F.3d at 187); *Daimlerchrysler Corp.*

*v. Karman*, 782 N.Y.S.2d 343, 346–47 (N.Y. Sup. Ct. 2004); *Bell v. Helmsley*, 2003 WL

21057630, at *1 (N.Y. Sup. Ct. Mar. 27, 2003).  In determining what a reasonable client would

be willing to pay, the Second Circuit in *Arbor Hill* specifically instructed courts to:

> [C]onsider factors including, but not limited to the complexity and difficulty of the
> case, the available expertise and capacity of the client's other counsel (if any), the
> resources required to prosecute the case effectively (taking account of the resources
> being marshaled on the other side but not endorsing scorched earth tactics), the
> timing demands of the case, whether an attorney might have an interest
> (independent of that of his client) in achieving the ends of the litigation or might
> initiate the representation himself, whether an attorney might have initially acted
> pro bono (such that a client might be aware that the attorney expected low or non-
> existent remuneration), and other returns (such as reputation, etc.) that an attorney
> might expect from the representation.

522 F.3d at 184; *see also Citicorp Tr. Bank, FSB v. Vidaurre*, 65 N.Y.S.3d 237, 239 (2d Dep't

2017) ("In determining reasonable compensation for an attorney, the court must consider such

factors as the time, effort, and skill required; the difficulty of the questions presented; counsel's

experience, ability, and reputation; the fee customarily charged in the locality; and the

contingency or certainty of compensation.").

    Courts have recently held that hourly rates of $500 to $700 an hour are reasonable for

experienced partners at large firms handling complex civil litigation.  *See, e.g.*, *CBF Industria de*

*Gusa S/A v. AMCI Holdings, Inc.*, 342 F.R.D. 84, 89 (S.D.N.Y. 2022); *see also Byline Bank v.*

*SDS Dining Corp.*, 2024 WL 1422812, at *7 (S.D.N.Y. Apr. 3, 2024) (collecting cases); *H.B. Automotive Grp., Inc. v. KIA Motors Am., Inc.*, 2018 WL 4017698, at *6 (S.D.N.Y. July 25, 2018); *KCG Holdings, Inc. v. Khandekar*, 2020 WL 7053229, at *5 (S.D.N.Y. Dec. 2, 2020) ("We note that a number of cases have commonly found partner rates in the range of $350 to $650 per hour to be reasonable in breach of contract suits.") (collecting cases), *report and recommendation adopted sub nom. KCG Holdings v. Khandekar*, 2021 WL 623927 (S.D.N.Y. Feb. 17, 2021) (Nathan, J.).[6]  Courts have also found hourly rates between $300 to $585 to be reasonable for associates, *CBF Industria de Gusa S/A*, 342 F.R.D. at 89; *H.B. Automotive Grp., Inc.*, 2018 WL 4017698, at *8, and rates ranging from $100 to $200 an hour to be reasonable for paralegals and non-lawyer support staff, *see, e.g.*, *Hong*, 2024 WL 1242507, at *6; *Weng v. New Shanghai Deluxe Corp.*, 3034 WL 1116144, at *2 (S.D.N.Y. Mar. 13, 2024) ("[F]or paralegals, courts in this District generally consider hourly rates of between $100 to $150 to be reasonable."); *Vargas Garcia v. Park*, 2019 WL 6117596, at *5 (awarding $100 per hour for the services of a "translator/paralegal").

      Six Whiteford partners, including one non-equity partner, billed time to this matter.  They are Keith Whitson, Michael J. Roeschenthaler, Scott M. Hare, Stephen M. Faraci, Thomas J. Francella, Jr., and Daniel R. Schimizzi.  Dkt. No. 78-1.  Each of the five equity partners billed at

---

[6] The Court recognizes that there has not been perfect consistency in assessing the reasonableness of attorneys' fees. *See, e.g., Tessemae's LLC v. Atlantis Cap. LLC*, 2019 WL 2635956, at *4 (S.D.N.Y. June 27, 2019) ("Courts in this District have determined that hourly rates ranging from $250 to $1,260 per hour, for attorneys' work on a commercial litigation matter, were reasonable.").  In light of the large variance, the facts of each case and the credentials and experience of each timekeeper are critical to determining the appropriate hourly rate.

a rate of $600 per hour,[7] while the non-equity partner, Mr. Schimizzi, billed at a rate of $535 per hour.  *Id.*

The Court finds that the $600 hourly rates of Mr. Faraci, Mr. Hare, and Mr. Francella are reasonable.  Mr. Faraci and Mr. Hare were the two lead partners on the matter, with Mr. Faraci billing over 350 hours to the case, and Mr. Hare billing nearly 230 hours.  *Id.*  Mr. Faraci obtained his law degree and license to practice law in 1998, and has maintained a broad-based commercial litigation practice in the twenty-five years since, practicing in both state and federal courts.  *Id.* ¶ 5(a).  Mr. Hare graduated from law school in 1991, has been licensed to practice law in Pennsylvania since 1991 and in Michigan since 1995, and has spent the entirety of his 33 years of practice engaged in commercial and complex litigation.  *Id.* ¶ 5(b).  Mr. Francella billed just over 64 hours to this matter.  Mr. Francella has been a licensed attorney since 1999 and has maintained an active bankruptcy practice for over 25 years.  *Id.* ¶ 2.  The proposed rate of $600 an hour is reasonable for those lawyers.  The rates were negotiated at arms-length between sophisticated parties.  This matter presented difficult issues of contract interpretation, involving multiple contracts in a relatively new industry, and it concerned events in both the United States and Brazil, all of which had to be handled quickly due to the nature of the action.  Defendant's counsel achieved complete success, defeating each of Plaintiffs' claims and obtaining judgment in its favor on its counterclaim.  *See Barfield v. N.Y.C. Health & Hosps. Corp.*, 537 F.3d 132, 152 (2d Cir. 2008) ("The most critical factor in a district court's determination of what constitutes reasonable attorney's fees in a given case is the degree of success obtained by the plaintiff.").  Moreover, the matter involved issues that required Mr. Francella's bankruptcy

---

[7] For at least two of the partners, Mr. Faraci and Mr. Hare, the $600 hourly rate sought now was a reduced rate negotiated by Aspiration.  Dkt. No. 75 at 6.  Mr. Faraci's usual rate is $765 per hour, and Mr. Hare's is $840 per hour.  *Id.*

expertise.  Accordingly, a reasonable client would be willing to pay $600 an hour for the services of each of Mr. Francella, Mr. Faraci and Mr. Hare.

Defendant provides no information as to the experience or credentials of the remaining partners, Mr. Whitson, Mr. Roeschenthaler, and Mr. Schimizzi, each of whom billed no more than 2.1 hours to this matter.  Dkt. No. 78-1.  Defendants have not justified the work of these attorneys on this matter.  Thus, the Court does not award any fees for the work of those three partners.  *See, e.g.*, *United Realty Advisors, LP v. Verschleiser*, 2023 WL 4141545, at *12 (S.D.N.Y. June 23, 2023) ("Courts routinely reduce fee awards for this sort of overstaffing, given the excess that invariably results from the needless involvement of too many attorneys; *see also Gen. Elec. Co. v. Compagnie Euralair, S.A*., 1997 WL 397627, at *4 (S.D.N.Y. July 3, 1997) ("It is well recognized, of course, that when more lawyers than are necessary are assigned to a case, the level of duplication of effort increases.").

Four counsel billed time on this matter: Robert Best, Harry Readshaw, Richard Riley, and Tina Roeschenthaler.  Mr. Best, who billed approximately 162 hours to this case at a rate of $600 per hour, graduated from law school in 1993, but did not enter private practice until 2005, at which point he worked on cases involving commercial disputes, fiduciary issues, construction defects, real estate litigation, insurance coverage, products liability, land use and zoning, natural resources leases, and torts.  Dkt. No. 75-1 ¶ 4(c).[8]  Mr. Readshaw, who billed about 23 hours to this case and is also seeking a rate of $600, has been practicing law for eighteen years, since he graduated from law school in 2006, and has handled matters involving commercial disputes, bankruptcy, real estate, energy, corporate governance, secured transactions, and construction.  *Id.*

---

[8] Mr. Best serviced as an officer in the United States Army Judge Advocate General's Corps from 1994 to 2005.  Dkt. No. 75-1 ¶ 4(c).

Defendant provides no case law in which courts have awarded $600 to counsel, relying instead on case law that concerned attorneys' fees for partners.  *See Charlestown Cap. Advisors, LLC v. Acero Junction, Inc.*, 2021 WL 1549916, at *3 (S.D.N.Y. Apr. 20, 2021) (reducing requested fees in part because the party had not "made any effort" to compare rates charged to rates charged by counsel in similar cases and approved by courts in this district); *Madigan v. Berkeley Cap. LLC*, 194 N.Y.S.3d 713, at *10 (N.Y. Sup. Ct. 2023).  The Court finds that a rate of $500 per hour is reasonable for Mr. Best and Mr. Readshaw, who are more junior and have practiced for less time than the partners in this case, and also have less experience in the practice area that this case concerns.  *See, e.g.*, *HomeAway.com, Inc. v. City of New York*, 523 F. Supp. 3d 573, 597 (S.D.N.Y. 2021) (awarding a lower hourly rate for partners and counsel with less experience); *see also Magalios v. Peralta*, 2024 WL 1856303, at *3 (S.D.N.Y. Apr. 26, 2024) (considering seniority and experience).

No information is provided about the other two counsel—Mr. Riley and Ms. Roeschenthaler—who billed 1.2 and 2.7 hours, respectively, to the matter.  Where the fee applicant "has not even provided the most basic information necessary to assess the reasonableness of rates: the years of experience of the particular attorneys and the type of experience they have had," courts have generally reduced fee requests.  *See, e.g.*, *Wells Fargo Tr. Co., N.A. v. Fast Colombia S.A.S.*, 2023 WL 8591953, at *7 (S.D.N.Y. Oct. 16, 2023); *see also Bankers Fed. Sav. Bank*, 638 N.Y.S.2d at 74 (remanding to trail court where "the court lacked adequate information from which to assess the value of counsel's services").  As with the partners as to whom Defendant provided no biographical information and who also billed

negligible amounts of time to this case, the Court declines to award any fees for the work to Mr. Riley and Ms. Roeschenthaler.[9]

Five Whiteford associates billed time to the matter: Harrison Whit Long, Patrick D. Houston, Robert N. Drewry, Anthony T. Gestrich, and Alison Gutierrez. Mr. Long is a 2017 law school graduate, whose hourly fee was $505.61. Dkt. No. 78-1. Mr. Drewry is a 2016 law school graduate, whose hourly fee was $530. *Id.* And Ms. Gutierrez is a 2021 law school graduate, whose hourly fee was $405.90. *Id.* Defendant provides no other information about these three associates, such as how long they have been licensed and in what jurisdictions, their practice area, or any specific skills that would support the reasonableness of the rates. Courts in this District often reduce awards for the moving party's failure to provide such information. *See, e.g.*, *Yea Kim v. 167 Nail Plaza, Inc*., 2009 WL 77876, at *9 (S.D.N.Y. Jan. 12, 2009) (reducing

---

[9] Over the course of the approximately ten months that this case was litigated, it was staffed with fifteen attorneys—six partners, four counsel, and five associates—and six support staff, including the law clerk. The minimal amount of involvement by three of the partners and two of the counsel—who collectively billed less than ten hours to the case, reflects that more lawyers than were necessary were assigned to the case, thus likely duplicating some of the work completed. For example, one attorney's only time entry for this matter was for time spent reviewing the complaint. *See, e.g.*, *Robinson v. City of New York*, 2009 WL 3109846, at *7–8 (S.D.N.Y. Sept. 29, 2009) (reducing fee award where work was passive, merely staying abreast of the status of litigation, and thus unnecessary). Further, courts in this Circuit frequently "pare[] hours based on overstaffing." *Houston v. Cotter*, 234 F. Supp. 3d 392, 404–06 (E.D.N.Y. 2017) (collecting cases); *see Melodrama Publ'g, LLC v. Santiago*, 2015 WL 2380521, at *6 (S.D.N.Y. May 19, 2015) (reducing fees where the hours billed were excessive and partner-heavy). In fact, even in large-scale litigation that lasts several years where many attorneys are needed, which courts recognize come with "inherent inefficiencies and redundancies that occur with respect to the time expended," these redundancies are nevertheless deemed to fall "outside the scope of compensable attorneys' fees." *Severstal Wheeling, Inc. v. WPN Corp*., 2016 WL 1611501, at *4 (S.D.N.Y. Apr. 21, 2016). Certainly then, the minimal hours billed by five senior attorneys—on each of whom the Court possesses no information beyond title—in this case, which did not pose the same workflow and managerial challenges, need not be credited by the Court. Accordingly, the Court does not count the hours of the three partners and two counsel as to whom no information regarding experience and credentials is provided and who did very little work on the case.

attorneys' fees for attorneys where "no information has been provided as to '[their] experience, reputation and ability'"); *see also Matter of Estate of Smith*, 516 N.Y.S.2d 364, 266 (3d Dep't 1987) (explaining that "the length of an attorney's admission" or time practicing "is not necessarily reflective of ability and reputation," and requiring additional evidence of those factors). The Court will award attorneys' fees at a rate of $350 an hour for Mr. Drewry and Mr. Long, and $300 for Ms. Gutierrez given her more junior status. *See, e.g.*, *Gong v. Sarnoff*, 2024 WL 1621347, at *5 (S.D.N.Y. Apr. 15, 2024); *MSC Mediterranean Shipping Co. Holding S.A. v. Forsyth Kownacki LLC*, 2017 WL 1194372, at *3 (S.D.N.Y. Mar. 30, 2017) (hourly rates of associates based on seniority).

As to the remaining two associates—Mr. Gestrich, who billed 13 hours at a rate of $515 per hour and Mr. Houston, who billed 21 hours at a rate of $528.33 per hour—Defendant provides no information at all. New York courts have required fee applicants to "establish the value of [their] services by showing such factors as . . . [their] experience, ability and reputation." *Potts v. Hines*, 534 N.Y.S.2d 507, 508 (2d Dep't 1988); *see, e.g.*, *Breidbart v. Wiesenthal*, 985 N.Y.S.2d 719, 720 (2d Dep't 2014); *Rosenzweig v. Gomez*, 672 N.Y.S.2d 907, 908 (2d Dep't 1998). And although it is Defendant's burden to do so, Defendant presents "no evidence regarding the skills, qualifications, or experience" of these two associates, and thus "compensation must be made near the lower end of the market range." *Torres v. City of New York*, 2008 WL 419306, at *2 (S.D.N.Y. Feb. 14, 2008) (Lynch, J.). In recent years, courts have found rates as low as $160 per hour to be reasonable for associates in breach of contract cases, *see Hitachi Data Sys. Credit Corp. v. Precision Discovery, Inc.*, 2020 WL 5731953, at *2 (S.D.N.Y. Sept. 24, 2020). The Court thus reduces the rates for Mr. Gestrich and Mr. Houtson to $200 per hour.

Aspiration also billed the time of two litigation support personnel each at $360 an hour and three paralegals at rates ranging from $275 an hour to $415 an hour.  Dkt. No. 5-1.  No information as to the credentials or experience is provided as to any of these professionals.  In the absence of evidence that any of these professionals have graduated from law school or any other information about their qualifications or experience, Aspiration is entitled to no more than $115 an hour for each of these persons.  *See, e.g.*, *Flatiron Acquisition Vehicle, LLC v. CSE Mortg. LLC*, 2022 WL 413229, at *15 (S.D.N.Y. Feb. 9, 2022) (reducing hourly rates of legal support staff from $400 and $465 per hour to $150 per hour because the court lacked information suggesting that the employees had "particular skill, training or experience that might justify those rates"); *Drip Cap., Inc. v. M/S Goodwill Apparels*, 2024 WL 1116166, at *2 (awarding paralegal in complex commercial case $125 per hour); *JTH Tax LLC v. Sanchez*, 2023 WL 6813449, at *6 (S.D.N.Y. Oct. 16, 2023) (approving a rate of $125 per hour), *report and recommendation adopted by* 2023 WL 8936352 (S.D.N.Y. Dec. 27, 2023); *see also Sharbat v. Iovance Biotherapeutics, Inc.*, 2024 WL 2078390, at *8 (S.D.N.Y. May 9, 2024) (noting that the rate for "even senior paralegals" is "typically . . . capped at $200/hour").

Finally, Aspiration seeks to recover the fees of a "law clerk," Tara Bhatia, at the rate of $300 per hour.  Dkt. No. 75-1.  Although the title of "law clerk" is "a term that courts in this District generally understand as a law school graduate not yet admitted to the bar," *Hong*, 2024 WL 1242507, at *6, it has, at times, also been used to describe law students who have not yet graduated, *see, e.g.*, *M.C. ex rel. E.C. v. Dep't of Educ. of City of New York*, 2013 WL 2403485, at *7 (S.D.N.Y. 2013).  The reasonable hourly rates of law school graduates who have not yet been admitted to the bar is different from that of law students—law school graduates generally command fees slightly less than licensed first-year attorneys, *see, e.g.*, *Anthony v. Franklin First*

*Fin., Ltd.*, 844 F. Supp. 2d 504, 508 (S.D.N.Y. 2012), whereas law "[s]tudents are generally billed at rates similar to those of paralegals," *Moon v. Gab Kwon*, 2002 WL 31512816, at *3 (S.D.N.Y. Nov. 8, 2002) (Lynch, J.).  Defendant presents no evidence as to whether Ms. Bhatia had graduated from law school when she worked on this case.  Without any information as to whether Ms. Bhatia has obtained a law degree, the Court finds that only fees commensurate with a law student or paralegal are appropriate.  Accordingly, the Court finds that Defendant is entitled to the same hourly rate as the Court awarded the paralegals in this case for Ms. Bhatia's work—a rate of $115 per hour.  *See, e.g.*, *Casmento v. Volmar Constr., Inc.*, 2022 WL 17666390, at *4 (S.D.N.Y. Dec. 14, 2022) (reducing hourly rate of law student to the same rate as the hourly rate of paralegals).

### B.    Hours Billed

"After determining the appropriate hourly rate, a court must also examine whether the number of hours billed was reasonable based on an objective reasonableness standard."  *Gong*, 2024 WL 1621347, at *6.  In this process, the court has discretion to disregard hours viewed as "excessive, redundant, or otherwise unnecessary."  *Bliven v. Hunt*, 579 F.3d 204, 213 (2d Cir. 2009) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983)).  "In so doing, 'the district court does not play the role of an uninformed arbiter but may look to its own familiarity with the case and its experience generally as well as to the evidentiary submissions and arguments of the parties.'"  *Id.* (quoting *DiFilippo v. Morizio*, 759 F.2d 231, 236 (2d Cir. 1985)).  The critical inquiry is "whether, at the time the work was performed, a reasonable attorney would have engaged in similar time expenditures."  *Grant v. Martinez*, 973 F.2d 96, 99 (2d Cir. 1992), *cert. denied*, 506 U.S. 1053 (1993); *see also Gamache v. Steinhaus*, 776 N.Y.S.2d 310, 311 (2d Dep't 2004).

Because "it is unrealistic to expect a trial judge to evaluate and rule on every entry in an application," *Carey*, 711 F.2d at 1146, "the court has discretion simply to deduct a reasonable percentage of the number of hours claimed 'as a practical means of trimming fat from a fee application,'" *Kirsch v. Fleet St., Ltd*., 148 F.3d 149, 173 (2d Cir. 1998) (quoting *Carey*, 711 F.2d at 1146); *Noghrey v. Town of Brookhaven*, 17 Misc.3d 1102(A) (N.Y. Sup. Ct. 2007). A district court is therefore not required to "set forth item-by-item findings concerning what may be countless objections to individual billing items." *Lunday v. City of Albany*, 42 F.3d 131, 134 (2d Cir. 1994); *see Shrauger v. Shrauger*, 537 N.Y.S.2d 84, 85 (3d Dep't 1989) ("[I]n arriving at [a] fee award, . . . the trial court is not required to precisely spell out how it weighed the various factors making up the fee allowed.").

As noted, Defendant submits contemporaneous time records in support of its motion. *See* Dkt. No. 75-1. The records are arranged by date and specify which timekeeper performed the services, provide a description of the tasks performed, and state the number of hours expended on the tasks. Defendant's attorneys for whom the Court will grant fees expended a total of 1,074 billable hours on the matter, split between 647.8 hours for the partners, 185.4 hours for counsel, and 240.8 hours for associates. The non-lawyers expended a total of 18.1 billable hours on the matter. Although the Court concludes that the hours are excessive and reflect some redundancy as detailed *infra*, this case did require a fair amount of activity by counsel over the relatively short one-year period during which it was pending. Plaintiffs filed a total of four complaints. Dkt. Nos. 5, 8, 16, 35.[10] Defendant had to respond to Plaintiffs' request for a temporary restraining order and prepare for a hearing on a preliminary injunction. Dkt. No. 9. Defendant

---

[10] However, the first three complaints were filed within a one-month span, *see* Dkt. Nos. 5, 8, 16, thus requiring Defendant to respond only twice, rather than four times, *see* Dkt. Nos. 25, 37.

filed two motions to dismiss.  Dkt. Nos. 25, 37.  When the motions were denied, Defendant filed

an answer.  Dkt. No. 46.  After the initial pleading stage of litigation had concluded, Defendant

moved for and briefed the issue of expedited discovery, Dkt. No. 29, which Plaintiffs opposed,

Dkt. No. 31, resulting in the Court holding oral argument on the matter, *see* 10/23/2023 Minute

Entry.  The parties then conducted expedited discovery, including document production and

depositions.  In advance of the bench trial, Defendant filed motions *in limine*, Dkt. Nos. 56–57,

and both parties filed trial memoranda, Dkt. Nos. 63–65, 68–69.  At the two-day trial, counsel

engaged in both oral argument and examinations of four witnesses.  Only two attorneys—the

lead counsel on the case—attended the trial.  Given the expedited disposition of this case—less

than a year between initiation of the action to the trial and the Court's determination of

liability—there was little opportunity for counsel to be inefficient, and, as to the matters the

Court was able to observe, counsel did not appear to be inefficient.  The matter was billed to a

sophisticated corporate client and counsel undertook a real risk that Aspiration would not prevail

or that, if it did prevail, Aspiration would not be able to collect fees.

That said, Defendant's records raise a number of issues.  First, many of the entries are

"block-billed," with multiple distinct tasks aggregated into a single billing entry.  *See Wise v.

Kelly*, 620 F. Supp. 2d 435, 450 (S.D.N.Y. 2008).  Block-billing, while disfavored, "is not

prohibited as long as the court can determine the reasonableness of the work performed."

*Adorno v. Port Auth. of N.Y. & N.J.*, 685 F. Supp. 2d 507, 515 (S.D.N.Y. 2010); *see Berry v.

Deutsche Bank Tr. Co. Ams.*, 632 F. Supp. 2d 300, 306 (S.D.N.Y. 2009).  But where block-

billing obfuscates how the time was actually spent and impedes a court's efforts to evaluate the

reasonableness of any of the listed activities, courts have reduced attorneys' fees awards.  *See,

e.g.*, *Trinidad v. Pret a Manger (USA) Ltd.*, 2014 WL 4670870, at *9 (S.D.N.Y. Sept. 19, 2014);

*Charles v. City of New York*, 2014 WL 4384155, at *6 (S.D.N.Y. Sept. 4, 2014); *Genger v. Genger*, 2015 WL 1011718, at *2 (S.D.N.Y. Mar. 9, 2015); *see also Thai–Lao Lignite (Thai.) Co. v. Gov't of Lao People's Democratic Republic*, 2012 WL 5816878, at *8 n.9, *10 (S.D.N.Y. Nov. 14, 2012) (reducing fee award where partner billed 11-hour days in single entries). Block-billing "is most problematic where large amounts of time (e.g., five hours or more)" are billed in a single entry; "in such circumstances, the limited transparency afforded by block[-]billing meaningfully clouds a reviewer's ability to determine the projects on which significant legal hours were spent," *Beastie Boys v. Monster Energy Co*., 112 F. Supp. 3d 31, 53 (S.D.N.Y. 2015), and where the fee applicant "has combined activities compensable at different rates," *G.B. ex rel. N.B. v. Tuxedo Union Free Sch. Dist.*, 894 F. Supp. 2d 415, 441 (S.D.N.Y. 2012). Both circumstances are present in this case. Here, dozens of entries block-bill long stretches of time for unrelated tasks, leaving the record unclear as to how much time was spent on each activity and whether that time was reasonable. The Court therefore has discretion to reduce the requested fee award. *See, e.g.*, *Silverstein v. Goodman*, 979 N.Y.S.2d 308, 310 (1st Dep't 2014).

Second, a review of the bills reflects that there were tasks conducted by partners that could have been conducted by counsel or associates, and tasks conducted by counsel or associates that could have been conducted by the paralegals, which itself warrants a reduction in the overall fee award. *See, e.g.*, *Tlacoapa v. Carregal*, 386 F. Supp. 2d 362, 372 (S.D.N.Y. 2005) (reducing hours where "tasks were performed by individuals more qualified, and therefore more highly compensated, than necessary"). For example, there are several instances of partners conducting basic legal research, *see* Dkt. No. 78-1, a task that courts recognize as constituting "junior-attorney level tasks," *Andrews v. City of New York*, 118 F. Supp. 3d 630, 640 (S.D.N.Y. 2015). Partners also revised standard forms of service, a routine procedural task that could have

been performed by an associate. *See, e.g.*, *Lane Crawford LLC v. Kelex Trading (CA) Inc.*, 2013 WL 6481354, at *9 (S.D.N.Y. Dec. 3, 2013) (finding fee reduction warranted where attorney billed at $350/hour for work such as drafting standard forms of service and reviewing judge's rules), *report and recommendation adopted*, 2014 WL 1338065 (S.D.N.Y. Apr. 3, 2014). Associates also billed time for routine clerical tasks, such as filing documents with the Court, work that can be handled by support staff who bill at lower rates, such as paralegals. *See, e.g.*, *Rozell v. Ross-Holst*, 576 F. Supp. 2d 527, 540 (S.D.N.Y. 2008).

Because the number of "excessive" hours is difficult to quantify given the block-billing, the Court finds it appropriate to employ an across-the-board percentage reduction to the attorneys' fees sought. *See Williams v. Epic Sec. Corp.*, 368 F. Supp. 3d 651, 660–61 (S.D.N.Y. 2019). Applying a practical approach to the review of counsel's hours, a haircut of ten percent to the time of each attorney will be applied.[11] The haircut will not be applied to the time of the non-attorneys.

## III.    Costs

Aspiration seeks to recover $24,848.14 in costs incurred in litigating this action. These costs include charges for court fees, delivery services, transcription services, local travel, meals, and online research. "Courts will typically award 'those reasonable out-of-pocket expenses incurred by the attorney and which are normally charged fee paying clients.'" *Gong*, 2024 WL 1621347, at *7 (quoting *Reichman v. Bonsignore, Brignati & Mazzotta, P.C.*, 818 F.2d 278, 283 (2d Cir. 1987)). "A prevailing party may be reimbursed for expenditures which add to the proceeding and are not part of the attorney's ordinary overhead." *Bd. of Trs. of Am. Fed'n of*

---

[11] The ten percent reduction leaves counsel's total hours billed to the matter as follows: for Mr. Hare, 206.37 hours; for Mr. Faraci, 318.96 hours; for Mr. Francella, 57.69 hours; for Mr. Best, 145.89 hours; for Mr. Readshaw, 20.97 hours; for Mr. Long, 118.8 hours; for Mr. Houston, 18.9 hours; for Mr. Drewry, 16.38 hours; for Mr. Gestrich, 11.7 hours; for Ms. Gutierrez, 50.94 hours.

*Musicians & Emps. Pension Fund v. Banos*, 2019 WL 2477316, at *7 (S.D.N.Y. May 24, 2019)

(quoting *LaBarbera v. Cent. Design Sys. Inc*., 2006 WL 3422645, at *4 (E.D.N.Y. Nov. 28,

2006)), *report and recommendation adopted*, 2019 WL 2473452 (S.D.N.Y. June 13, 2019).

"Out-of-pocket disbursements for items like photocopying, travel and telephone costs are

generally recoverable and are not considered part of counsel's overhead expenses."  *Orser*, 108

N.Y.S.3d at 682.[12]  The costs incurred are reasonable and do not appear to include ordinary

overhead costs.  As such, the Court awards Defendant's application for costs in the requested

amount of $24,848.14.

## CONCLUSION

For the foregoing reasons, the motion for attorneys' fees is GRANTED AS MODIFIED.

The Court does not award any fees for the work of partners Keith Whitson, Michael

Roeschenthaler, or Daniel Schimizzi.  It also does not award fees for the work of two counsel,

Richard Riley and Tina Roeschenthaler.  Excluding those attorneys, and applying a ten percent

across-the-board reduction in hours of other attorneys at the Court-designated rates, the Court

awards attorneys' fees award to Defendant in the amount of $504,038.50.  With costs, which

total $24,848.14, the Court awards $528,886.64 in fees and costs to Defendant.

---

[12] Included in Defendant's application for costs is research conducted on legal research websites.
*See* Dkt. No. 75-1.  Although New York courts have found that "[c]omputerized research
expenses are generally recoverable as part of attorney's fees, rather than costs," where the non-
moving party has not objected to reimbursement of Westlaw and LexisNexis charges as a cost
rather than a component of fees, New York courts have permitted categorizing them as costs.
*See, e.g.*, *Orser*, 108 N.Y.S.3d at 687 n.2.

The Clerk of Court is respectfully directed to close Dkt. No. 74.


SO ORDERED.


Dated: July 15, 2024
    New York, New York                          LEWIS J. LIMAN
                                     United States District Judge